**Kimberly Marie SNAWDER, Plaintiff,**

v.

**Stuart P. COHEN, M.D., et al., Defendants.**

**No. C–89–0629–L(B).**

United States District Court,
W.D. Kentucky,
at Louisville.

April 20, 1990.

---

John M. Mayer, Jr., Clarksville, Ind., for Kimberly Marie Snawder.

Landrum & Shouse, Louisville, Ky., for Wyeth–Ayerst.

Brown, Todd & Heyburn, Louisville, Ky., for Lederle Labs.

Kennedy Simpson, Louisville, Ky., for Pfizer Labs.

Gerald R. Toner, Louisville, Ky., for Cohen, M.D.

## MEMORANDUM

BALLANTINE, Chief Judge.

This matter is before the Court on the motions of the two remaining Defendants [1], Dr. Stuart Cohen and Lederle Laboratories, for summary judgment. This case is a product liability suit. Plaintiff, Kimberly Marie Snawder ("Plaintiff"), allegedly contracted poliomyelitis from an oral vaccine manufactured by Lederle Laboratories ("Lederle") and administered by Dr. Stuart Cohen ("Cohen") nearly twenty years ago.

The vaccine which Plaintiff allegedly received was the Sabin oral polio vaccine. A number of courts have discussed, in considerable detail, the history of poliomyelitis in this country and the development of both the Salk and Sabin type vaccines. *See, e.g., Dunn v. Lederle Laboratories,* 121 Mich. App. 73, 328 N.W.2d 576 (Mich.App.1982); *Johnson v. American Cyanamid Co.,* 239 Kan. 279, 718 P.2d 1318 (1986). It is now generally known that people who receive the oral Sabin vaccine, and others who come in close contact with them, are subject to a known, but statistically small, risk of contracting polio from the live virus contained in the vaccine.[2] In August 1971, Cohen allegedly administered the third in a series of three polio vaccines the infant Plaintiff received. The following month, Plaintiff began limping and experienced some paralysis in one leg which Plaintiff contends was a result of polio she contracted from the vaccine.

Plaintiff complains that Lederle and Cohen failed to warn her, or her mother, of the dangers inherent in the oral polio vaccine's use. Plaintiff also complains that Lederle breached express warranties regarding the fitness of the vaccine. For purposes of their motions for summary judgment, Lederle and Cohen both assume that Plaintiff in fact contracted polio from the vaccine, and that Dr. Cohen failed to warn Plaintiff or her mother of the possibility that Plaintiff might contract polio from the vaccine.

Both Lederle and Cohen rely on certain deposition testimony by Plaintiff's mother, Mrs. Bishop, to the effect that she would have had the Plaintiff vaccinated even if she had been told of the risk of contracting polio from the vaccine. Defendants argue

---

1. Four of the six defendants originally named in the Amended Complaint have been dismissed by agreed order of the parties.

2. Available information in 1971 when Plaintiff was vaccinated estimated the risk to be no more than "one case of 'vaccine-associated' paralytic disease for every 3,000,000 or more doses of live, oral, polio vaccine distributed." (PHYSICIANS' DESK REFERENCE 807–808 (25th ed. 1970)).

that they are entitled to summary judgment since their alleged failure to warn was not the legal cause of Plaintiff's injuries. In addition, Defendant Lederle argues that Plaintiff's warranty theory is precluded by Kentucky law, while Defendant Cohen argues that he had no duty to warn Plaintiff of the risks involved in taking the polio vaccine.

## BACKGROUND

In this diversity case, the Court is obligated to apply Kentucky law. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This Court has found no Kentucky cases, however, which address the warning issue with respect to prescription drugs or vaccines. The Sixth Circuit Court of Appeals has reviewed cases from other jurisdictions which raised questions regarding liability for poliomyelitis contracted from a polio vaccine. *See Schindler v. Lederle Laboratories,* 725 F.2d 1036 (6th Cir.1983) (Warnings given by manufacturer of oral polio vaccine in package inserts and by association of pediatrics in committee report on infectious diseases were adequate to put pediatrician on notice regarding danger associated with giving oral polio vaccine to child suffering from immunity deficiency); *Berry v. American Cyanamid Co.,* 341 F.2d 14 (6th Cir.1965) (Applying Tennessee law and holding that there was no privity of contract between Plaintiff and manufacturer of oral vaccine where vaccine distributed by manufacturer to physicians in original closed package to be administered to patients was administered to plaintiff by his physician).

A number of courts in other jurisdictions have also considered the liability of a manufacturer of oral live (Sabin-type) polio vaccine for injuries resulting from administration of the vaccine. *See generally* Annotation, *Liability of Manufacturer of Oral Live Polio (Sabin) Vaccine for Injury or Death From Its Administration,* 66 ALR 4th 83 (1988).

A vaccine manufacturer is generally recognized to have a duty to exercise due care in the preparation and marketing of the product it manufactures, and the degree of this duty of care is commensurate with the harm which may result from the manufacturer's negligence. *Id.* at 88. Included within the manufacturer's obligations is the duty to warn adequately of the dangers involved with a product's use in such a manner that the nature and seriousness of the dangers which are known or should be known to the manufacturer are conveyed to consumers; such warnings are required even where the number of consumers who may be harmed is not large. *Id.* Evidence that a drug was manufactured for administration only by a physician, and that the physician knew or should have known of the dangers involved in the product's use, does not of itself preclude a finding that the manufacturer was negligent in failing to communicate adequate warnings regarding the drug. *Id.*

There has been considerable debate regarding whether the manufacturer of a vaccine can be held liable under a theory of strict liability pursuant to RESTATEMENT (SECOND) OF TORTS § 402A (1965). The theory of strict liability has been adopted by Kentucky courts, *Dealer Transport Co. v. Battery Distributing Co.,* 402 S.W.2d 441 (Ky.1965). Comment k of § 402A is instructive on the issue of strict liability as applied to manufacturers of unavoidably unsafe products and has commonly been applied in the field of drugs. Comment k provides:

There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally

be sold except to physicians, or under the prescription of a physician ... The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk. (Emphasis in original).

RESTATEMENT (SECOND) OF TORTS § 402A comment k (1965).

Some courts have allowed plaintiffs to use a strict liability theory in making defective design claims against vaccine manufacturers, with varying degrees of success. *See Grinnell v. Charles Pfizer & Co.*, 274 Cal.App.2d 424, 79 Cal.Rptr. 369 (Cal.App. 1969) (manufacturer of oral polio vaccine could be held strictly liable in tort for injuries suffered by recipients of its vaccine despite trial judge's failure to instruct on theory of strict liability); *Johnson*, 718 P.2d 1318 (Where there was no claim made that the allegedly injurious vaccine was defective and the evidence indicated that vaccine was properly prepared and marketed, there was no design defect in oral polio vaccine).

The more persuasive line of cases is that which recognizes that an oral polio vaccine may qualify under comment k to § 402A as an unavoidably unsafe product for which special strict liability rules apply. Under this analysis, a vaccine manufacturer is not subject to strict liability for design defects. Instead, the manufacturer's liability is limited to manufacturing defects, for those cases in which the vaccine given had been improperly prepared, and warning defects,

where a manufacturer's failure to market a drug or vaccine without adequate warnings of its dangers renders the product defective.

■ A number of courts have characterized the oral polio vaccine as an unavoidably unsafe product, and then proceeded to analyze the adequacy of the manufacturer's warning under the rubric of a strict product liability defect. *See Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.1974), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); *Givens v. Lederle*, 556 F.2d 1341 (5th Cir.1977); *Johnson*, 718 P.2d 1318; *Dunn*, 328 N.W.2d 576; *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir.1968); *Cunningham v. Charles Pfizer & Co.*, 532 P.2d 1377 (Okl.1975). Where, as here, a plaintiff complained that no warning, or an inadequate warning, was given before the administration of the vaccine, the adequacy of a manufacturer's warning has been judged by a reasonableness standard. Thus, theories of negligence and strict liability in failure to warn cases have been deemed to be "functional equivalents." *Feldman v. Lederle Laboratories*, 97 N.J. 429, 479 A.2d 374, 386 (1984).[3] Whether analyzed under a negligence or a strict liability theory, the test used in evaluating warning issues is one of reasonableness.

Historically, plaintiffs who have brought suits to recover for vaccine-related poliomyelitis have alleged causes of action against manufacturers which are based on tort and breach of warranty theories. This Court is compelled, however, to note a recent statutory development in this area which affects the liability of vaccine manufacturers. Congress enacted the National Childhood

---

**3.** On this subject, Prosser and Keeton have said:

It is commonly said that a product can be defective in the kind of way that makes it unreasonably dangerous by failing to warn or failing adequately to warn about a risk or hazard related to the way a product is designed. But notwithstanding what a few courts have said, a claimant who seeks recovery on this basis must, according to the generally accepted view, prove that the manufacturer-designer was negligent. There will be no liability without a showing that the defendant designer knew or should have known in the exercise of ordinary care of the risk or hazard about which he failed to warn.

Moreover, there will be no liability unless manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public. Although this ground of recovery is sometimes referred to as strict liability, it is really nothing more than a ground of negligence liability described as the sale of a product in a defective condition, subject, however, only to the defenses and other limitations on liability applicable to strict liability rather than negligence.

W. Prosser and W. Keeton, PROSSER AND KEETON ON TORTS § 99, p. 697 (5th ed. 1984).

Vaccine Injury Act of 1986, Title 42 U.S.C. §§ 300aa–10 *et seq.*, with an effective date of October 1, 1988, establishing a national vaccine injury compensation program to provide a method of compensating persons who suffer vaccine-related injuries or death, including those related to oral polio vaccine, without the otherwise requisite lawsuit against the vaccine's manufacturer.[4]

## I. *Failure to Warn*

Plaintiff's complaint is that her mother was not warned by either her physician or the pharmaceutical manufacturer that there was a risk of contracting poliomyelitis from the oral polio vaccine. Lederle and Cohen rely on certain testimony of Plaintiff's mother in support of their argument that the alleged failure to warn did not cause Plaintiff's injury. As additional support for their argument, Defendants also point to the fact that, although Plaintiff was tentatively diagnosed in 1978 as probably suffering the residual effects of polio, possibly as a result of the oral vaccine, Plaintiff's mother still had her second child, born in 1985, vaccinated for polio as well. Mrs. Bishop testified, over the objection of Plaintiff's counsel, as follows:

Q. Okay. Given what you know about polio and what you knew about it then, if Dr. Cohen had told you that Kim had a one in three million chance of contracting polio from the vaccine, would you have had her not take the vaccine at that time?

\* \* \* \* \* \*

A. I was going to answer I think in a very fair term. I would have had it done, and the law required me to at the time.

Q. Okay.

A. You know, that was the law, yes, so either way, yes, because it was required by law.

Q. And you knew that not taking the vaccine would expose Kim potentially to a much greater risk of polio?

---

**4.** The National Vaccine Injury Compensation Program generally provides for the filing of a petition with the United States Claims Court to recover compensation for vaccine-related injuries or death. Title 42 U.S.C. § 300aa–11. Although the statutory scheme does not completely preclude a civil action against a vaccine administrator, it does require, for injury or death associated with a vaccine administered *after* the effective date of the statute, that a petition be filed, that the United States Claims Court have issued a judgment, and that the claimant then elect either to accept the judgment or to file a civil action for damages. Title 42 U.S.C. § 300aa–21.

The statutory scheme is also not limited to persons injured after its effective date of October 1, 1988. For vaccine-related injuries or death which occurred as a result of a vaccine administered before October 1, 1988, petitions must be filed before October 1, 1990. Title 42 U.S.C. § 300aa–16. One court, however, did find that the program does not apply where the injured party was injured as a result of a vaccine administered more than eight years prior to the Act's date of enactment, November 14, 1986. *Morris v. Parke, Davis & Co.*, 667 F.Supp. 1332 (C.D.Cal.1987). The *Morris* court applied 42 U.S.C. § 300aa–16(b)(1), which contemplates the effect of a *revised* Vaccine Injury Table, Title 42 U.S.C. § 300aa–14, and provides that if the Vaccine Injury Table is revised to make vaccine-related injuries which were not formerly compensable eligible for compensation, no vaccine-related injury which occurred more than 8 years before the date of the table's revision may be compensated. The provision in the Vaccine Injury Table for compensation for injuries arising from polio vaccines, however, is not a result of any revision to the table, but is one of those vaccines which the statute's drafters originally intended to be compensable. It appears that polio vaccine-related injuries, even those sustained more than eight years before the statute's effective date, are compensable.

The only limitations which this Court discerns in the statutory scheme which would affect Plaintiff are those provisions which limit the types of compensable expenses which may be recovered for vaccines administered before the statute's effective date, 42 U.S.C. § 300aa–15(b), and which limit the number of petitions associated with vaccines administered before October 1, 1988 to 3500. 42 U.S.C. § 300aa–11(b)(1)(B).

Of greatest significance to Plaintiff, however, is 42 U.S.C. § 300aa–11(a)(6) which provides that:

> If a person brings a civil action after the effective date of this subpart for damages for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this subpart, such person may not file a petition under subsection (b) of this section for such injury or death.

As Plaintiff's action was commenced in August 1989, after the effective date of the Program, this provision appears to preclude entirely any petition which Plaintiff might now contemplate filing for compensation under this federal statute.

A. That's right.

(Bishop Depo., pp. 150–151). Upon further examination by Plaintiff's counsel, Mrs. Bishop testified:

Q. Okay. Mr. Toner asked you a question which, if I can properly recall it, indicated that had you known back in 1971 that there was a one in three million chance that Kim would have contracted poliomyelitis by taking the oral poliomyelitis vaccine, would you have let her take that vaccine? And I'm sure I am paraphrasing it, but I think I have essentially said what he asked in that question.

MR. SCHILLER: Let me object to that. I recollect that he said had you known and didn't limit it to 1971, but just said had you known, period.

MR. MILLER: Had you known, period. Go ahead.

MR. MAYER: Well, I certainly didn't mean to misinterpret.

Q. Number one, do you remember the question?

A. Yes.

Q. Okay. Number two, any answer that you would give with reference to that question, is it fair to say that you are only guessing what your answer would have been had that question been presented to you 19—18 years ago?

\* \* \* \* \* \*

A. I haven't really thought about it, and I don't know what I would have done if it would have been proposed to me really, you know, just somebody looked at me and said—I don't know, John.

Q. Is there any way with reference to any question that you would be asked by anybody what you would have done under a given set of circumstances 18 years ago, would there be any way that you could answer what you would have done?

\* \* \* \* \* \*

A. No, I don't think that you can really speculate on hindsight, you know. It would be speculation.

(Bishop Depo., pp. 306–308).

In response, Plaintiff first argues that the admission on which Lederle and Cohen rely is inadmissible under the Federal Rules of Evidence. Plaintiff argues that the compound question, which sought a response based on Mrs. Bishop's present knowledge, as well as her knowledge at the time Plaintiff was vaccinated, was unfairly prejudicial and speculative. The Court is not persuaded by these arguments.

■ Although Mrs. Bishop's deposition testimony is clearly deleterious to Plaintiff's case, it is not unfairly prejudicial under Federal Rule of Evidence 403.[5] As has often been noted:

[U]nfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."

J. WEINSTEIN and M. BERGER, WEINSTEIN'S EVIDENCE ¶ 403[03] (1989).

The prejudicial impact of evidence must be significant in order to outweigh substantially its probative value. *Kolada v. General Motors Parts Division, General Motors Corp.*, 716 F.2d 373 (6th Cir.1983). In this case, the testimony of Plaintiff's mother is clearly relevant on a central disputed issue: whether the alleged warning defect was the responsible cause of Plaintiff's injury. The prejudicial effect of the testimony, if any, is not significant enough to warrant its exclusion.

■ Mrs. Bishop's testimony is also not the kind of opinion by a lay witness which Federal Rule of Evidence 701 was intended to prohibit.[6] The rule balances the need for relevant evidence against the danger of admitting unreliable testimony. The rule

---

**5.** Federal Rule of Evidence 403 provides:

**Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**6.** Federal Rule of Evidence 701 provides:

**Opinion Testimony by Lay Witnesses**

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

does not prohibit opinions by lay witnesses, but conditionally favors them. J. WEINSTEIN and M. BERGER, WEINSTEIN'S EVIDENCE ¶ 701[02] (1989). This Court finds nothing unreliable in the testimony of Mrs. Bishop. Even if her testimony can be characterized as an "opinion", she was obviously testifying from personal knowledge, and her response would clearly be helpful to the trier of fact in considering the issue of legal cause. Mrs. Bishop's response to Defendant Cohen's question is admissible and may be considered for purposes of Defendants' motions for summary judgment.

It is basic hornbook law that legal causation is an essential element of any negligence claim. In product liability suits brought in Kentucky, causation is an essential element of the plaintiff's case, regardless of the theory of recovery propounded. In *Holbrook v. Rose*, 458 S.W.2d 155 (Ky. 1970), the Court stated:

> This leaves then the plaintiff's alternative claims of negligence, breach of warranty and strict liability. We need not discuss the various refinements and considerations concerning the application of these theories of liability, because all of them have one common denominator which is that causation must be established. Whether we view the case as one presenting the problem of negligence in the preparation of the product, negligence in failing to adequately warn about the consequences of the use of the product, or improperly warranting the product to be fit for a particular purpose, or whether the problem is viewed as the sale of a product so defective as to be unreasonably dangerous because of an inherent defect or inadequate warning as to use, in every instance recited the product must be a legal cause of the harm.

*Id.* at 157. The Court is not convinced, however, that the testimony of Plaintiff's mother on the causation issue is dispositive of this matter, as Defendants contend.

There are typically two causation issues in a product liability case. The first involves determining whether the defendant's product caused the plaintiff's injuries. The second is whether the plaintiff's injuries resulted from the alleged defect in the defendant's product. *See Reyes v. Wyeth Laboratories*, 498 F.2d at 1279. Where the alleged defect is the manufacturer's failure to warn of the risks attendant to use of a prescription drug or vaccine, the plaintiff must establish that she would have refused to take the vaccine had adequate warning been given. *Cunningham v. Charles Pfizer & Co.*, 532 P.2d at 1382. A plaintiff's burden on the issue of legal cause, then, would normally require a showing that the plaintiff would not have taken the vaccine if adequate warning had been given.

A number of courts, however, have recognized that a plaintiff may be aided by a rebuttable presumption that she would have heeded any warning provided by the manufacturer and acted so as to minimize the risks. *See Reyes v. Wyeth Laboratories*, 498 F.2d at 1281; *Givens v. Lederle*, 556 F.2d 1341; *Williams v. Lederle Laboratories, Div. of American Cyanamid Co.*, 591 F.Supp. 381 (S.D.Oh.1984); *Cunningham v. Charles Pfizer & Co.*, 532 P.2d 1377. This presumption arises from the language of § 402A which provides, in part, that "[w]here warning is given, the seller may reasonably assume that it will be read and heeded ..." RESTATEMENT (SECOND) OF TORTS § 402A (1965). This language has been interpreted to provide a presumption which works in favor of a manufacturer where an adequate warning was given. Where there is no warning, the presumption that the consumer would have heeded an adequate warning works in favor of the plaintiff unless rebutted by the manufacturer. *See, generally, Reyes*, 498 F.2d at 1281. In this case, the presumption may be rebutted by the manufacturer's presentation of evidence showing the statistically low risk of contracting polio from the vaccine, or that a different warning would not have altered the plaintiff's decision to take the vaccine. *See Sheehan v. Pima County*, 135 Ariz. 235, 660 P.2d 486 (1982); *Williams v. Lederle Laboratories, supra.*

Although this Court can find no Kentucky case which affirmatively applies this presumption, Kentucky has adopted § 402A of the Restatement of Torts 2d. The presumption is formulated in comment

j of that section and presumably would be followed by the Kentucky courts.

■ This Court is not satisfied that there is no genuine issue of material fact in this case; Defendants Lederle and Cohen are therefore not entitled to judgement as a matter of law pursuant to F.R.Civ.P. 56. This Court finds that the deposition testimony of Mrs. Bishop is ambiguous at best. Although the testimony cited by the Defendants is clearly damaging, and could prove devastating for impeachment purposes, Mrs. Bishop's later testimony, on examination by Plaintiff's counsel, is rehabilitative, although self-serving.

Although this Court agrees with the Defendants that the rebuttable presumption does not guarantee that Plaintiff's failure to warn claim will be submitted to a jury, in this case the evidence does not conclusively rebut the presumption. The hypothetical question postulated to Plaintiff's mother by Cohen during her deposition does not rise to the level of an "adequate warning." This Court observes only that the "warning" offered for Mrs. Bishop's consideration during her deposition falls considerably short of the lengthy warnings considered by other courts which have reviewed the adequacy of warnings actually given by manufacturers or physicians. *See e.g. Johnson,* 718 P.2d at 1325. In addition, although Mrs. Bishop had her second child vaccinated for polio after Plaintiff had been tentatively diagnosed as suffering secondary effects of polio as a result of her vaccine, it is not clear from the evidence that Mrs. Bishop was ever *adequately* warned of the danger posed by the vaccine itself.

■ It may well be that Lederle's duty extended no further than to provide a warning to Plaintiff's physician, and not Plaintiff herself, since the administration of the vaccine, on each occasion it was given, apparently took place in a physician's office. *See Plummer v. Lederle Laboratories, Div of American Cyanamid Co.,* 819 F.2d 349 (2nd Cir.1987), *cert. denied* 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987); *Johnson,* 718 P.2d 1318; *Dunn,* 328 N.W.2d 576; *Williams v. Lederle Laboratories, supra.*[7] This Court cannot agree, however, with Lederle's assertion that it had "no duty other than to provide prescribing information regarding the ORIMUNE vaccine." (Lederle's Reply, p. 8). The same case on which Lederle relies for the proposition that a warning is not inadequate because it does not provide information on alternatives to the polio vaccine recognizes that "the manufacturer's duty is to adequately warn the physician of a known risk." *Johnson,* 718 P.2d at 1325. While Lederle may not have had a duty to warn Plaintiff or her mother directly, an adequate warning to their physician entails more the "prescribing information."

There is not enough evidence before this Court to determine the adequacy of the warnings, if any, which were given by Lederle to Cohen, and then by Cohen to Plaintiff's mother; that is an issue which is not currently before this Court. This Court is not satisfied by the evidence presented, however, that an adequate warning would not have made any difference in Mrs. Bishop's decision to have Plaintiff vaccinated. The motions of Lederle and Cohen for summary judgment on Plaintiff's failure to warn claim will be denied.

## II. *Breach of Warranty*

Lederle also contends that it is entitled to summary judgment on Plaintiff's claim of breach of express warranty. Lederle makes three arguments in this regard: that Plaintiff has not introduced any evidence of an "affirmation of fact or promise" made by Lederle to Plaintiff as required by KRS 355.2–313[8]; that Plaintiff

7. *But see Givens v. Lederle,* 556 F.2d 1341 (5th Cir.1977) (holding that the vaccine manufacturer had the responsibility to take definite steps to get its warning directly to the vaccine recipient if the vaccine administration in a private physician's office was more like administration at a health clinic than like administration of a prescription drug).

8. KRS 355.2–313 provides in part:

**Express warranties by affirmation, promise, description, sample.—**

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the

was not in privity with Lederle; and that Plaintiff did not give reasonable notice of the alleged breach to Lederle as required by KRS 355.2–607(3)(a).[9]

■ Plaintiff counters that package inserts provided by Lederle with its oral polio vaccine at the time of her vaccination created express warranties. Although this Court is satisfied that such package inserts prepared by the manufacturer Lederle could constitute an express warranty, any such warranty was not extended to Plaintiff under the circumstances of this case.

Kentucky still requires privity where liability is predicated, not on ordinary negligence or strict liability, but on warranty. *Williams v. Fulmer*, 695 S.W.2d 411 (Ky. 1985). In *Williams*, the Kentucky Supreme Court held that:

"If liability is based on sale of the product, it can be extended beyond those persons in privity of contract only by some provision of the U.C.C. as adopted in Kentucky. The only provision of the U.C.C. extending breach of warranty in injury cases is KRS 355.2–318 ...[10]

... with breach of warranty as expressed through KRS 355.2–318, beneficiaries of implied warranties are limited to the purchaser and to 'any natural person who is in the family or household of [the] buyer or who is a guest in his home.'"

*Id.* at 413–414. The analysis which the Kentucky Supreme Court applied to implied warranties in *Williams* is also applicable to express warranties.

For those states which have adopted the broader alternative versions of Section 2–318 of the Uniform Commercial Code,

breach of warranty may be extended "to any natural person who may reasonably be expected to use, consume or be affected by the goods." J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 11–3 (3rd ed. 1988). That, however, is not the law in Kentucky. Moreover, this Court is not persuaded by Plaintiff's argument that Kentucky would follow the lead of the California court which found that express warranties contained in package inserts inured to the benefit of injured vaccinates because the doctors who administered the polio vaccines were acting as agents for the plaintiffs. *See Grinnell v. Charles Pfizer & Company*, 274 Cal.App.2d 424, 79 Cal.Rptr. 369.

Plaintiff's mother never saw the package inserts before her daughter was vaccinated. (Bishop Depo., pp. 50, 233). Thus, any warranty in the package insert was not part of the "basis of the bargain." Lederle sold its vaccine to Dr. Cohen, not to Plaintiff. Plaintiff therefore lacks privity with Lederle and is beyond the scope of the warranty protection accorded by KRS 355.-2–318. As this Court finds that there was no express warranty which extended to Plaintiff, there is no need to address Lederle's remaining argument that Plaintiff did not give Lederle reasonable notice of the breach. Lederle's motion for summary judgment on the breach of express warranty claim made by Plaintiff will be granted.

### III. *Duty to Warn*

■ In addition to the causation argument on the failure to warn issue discussed at part I, *supra*, Defendant Cohen also argues that he is entitled to summary judgment because Plaintiff cannot prove that

---

goods shall conform to the affirmation or promise.
   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
   (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

**9.** KRS 355.2–607(3)(a) provides:
  Where a tender has been accepted
  (a) the buyer must within a reasonable time after he discovers or should have discovered

any breach notify the seller of breach or be barred from any remedy ...

**10.** KRS 355.2–318 provides:
  **Third party beneficiaries of warranties express or implied.—**
  A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

he had any duty to warn her of the risks involved in taking the oral polio vaccine. In support of his argument, Cohen relies on the testimony of Plaintiff's treating physician, an orthopedic surgeon, who testified during deposition:

Q. Let me address for a moment your experience just generally as a physician on the topic of caring for pediatric or patients generally. And if you don't feel you have expertise in this area, from what you talked about already, you can just tell us. But is it a fair statement that based upon your experiences after the development of the polio vaccine and into the 1970's, into the early 1970's, that while the state of medicine was such that the family practitioner or the pediatrician knew that there was a one in three million or more chance of contracting polio from the vaccine, that it was not common and it certainly wasn't a standard for the family practitioner or the pediatrician to give informed consent presentation [sic] to patients? If you don't know, you can tell us. but if do [sic] you know whether that was or wasn't common, you can tell us that as well.

(Objection omitted)

A. Well, I can answer. I once got sued for operating on a polio patient and the operative consent form wasn't even signed, nobody bothered to even get an OR consent form signed. In those days it was not—nobody thought that much about—you did what you thought was right.

Q. My question was not really to want to delve into your own personal experiences of whether you were sued or not sued but the upsweep of that was that it was not common and it was not standard to make an informed consent or obtain consents in order to give a child a board of education mandated oral vaccine?

(Objection omitted)

Q. Let me see if I can simplify it, Doctor.

A. Yeah.

Q. Is it a fair statement that in giving the oral vaccine in the early 1970's it was not common or standard of the practice to make an informed consent type of presentation to the patient regarding this one in three million chance that the oral vaccine might cause polio?

A. There was so much good publicity about the vaccine in those days, and I didn't know anyone who didn't recommend its use. I recall even the decision that one would even give the vaccine to children who have had polio. They were immune to polio that they had had but not necessarily the other viruses that caused polio that could be handled with the vaccine.

Q. Is the simple answer to that no, it was not common?

A. You just didn't think about it. A long time there was such a shortage of the vaccine that they would beat your door down.

(Auerbach Depo., pp. 73–76).

At the outset, this Court notes that it does not construe this testimony, as does Cohen, as an unequivocal statement that "Defendant Cohen was under no duty to inform Plaintiff of [the risks involved in taking the polio vaccine.]" (Cohen's Motion for Summary Judgment, p. 2). The testimony does not establish, as a matter of fact, that standard medical practice in 1971 dictated that physicians not inform patients of the odds of contracting polio from oral vaccines. It is not clear from the evidence before this Court that Cohen's alleged failure to disclose was consistent with the standards of practice in 1971.

Moreover, this Court is not persuaded that, as a matter of law, the standard of practice among doctors is the only relevant consideration.[11] The standard by which a

11. The primary authority cited by Plaintiff on this issue is *Fraley v. American Cyanamid Co.,* 589 F.Supp. 826 (D.C.Colo.1984). The plaintiff in *Fraley* had alleged a failure to warn a parent of the risk of contracting polio from a vaccinated child. The court granted a motion in limine precluding the defendant from even eliciting testimony from any witness regarding the standard of practice and duties of pediatricians at the time of a child's vaccination finding that only the acts of the treating physician, not the average or "reasonable" physician were relevant. *Fraley,* however, dealt with the question whether the conduct of a prescribing physician could insulate a drug manufacturer from liability if it was affirmatively established that the doctor would not have heeded an adequate warning. The intervening negligence of a phy-

physician's duty to inform a patient of the risks of a proposed treatment is measured diverges widely among jurisdictions. *See* Annotation, *Modern Status of Views as to General Measure of Physician's Duty to Inform Patient of Risks of Proposed Treatment*, 88 ALR 3d 1008 (1978). The traditional views are that the duty is measured by a professional medical standard; either the customary disclosure practice of physicians or what a reasonable physician would disclose under the same or similar circumstances. *Id.* at 1012. A number of jurisdictions, however, have recently adopted the view that a physician's duty to inform his patient of the risks of a proposed treatment is measured, not by a professional medical standard, but by the patient's need for information material to his decision either to accept or to reject the proposed treatment. The newer view, then, measures a physician's duty to inform from the patient's viewpoint. The traditional views have been widely criticized, although they apparently are still followed in the majority of jurisdictions. *See, generally, id.* at 1012–1020. As Defendant Cohen concedes, the Kentucky courts have not spoken clearly on the law of informed consent. *See Holton v. Pfingst*, 534 S.W.2d 786 (Ky.1975); *Bennett v. Graves*, 557 S.W.2d 893 (Ky.App. 1977).[12]

In sum, this Court is not persuaded that the testimony of Dr. Auerbach, on its face,

establishes that a physician had no duty to disclose the known risks attendant to the Sabin oral polio vaccine. As a matter of law, this Court is not yet convinced that some disclosure may not have been required regardless of the custom of disclosure (or nondisclosure) among local physicians. Cohen's motion for summary judgment on the ground that he had no duty to warn Plaintiff of the risk of contracting polio from the vaccine he administered will be denied.

---

sician affects the issue of legal cause vis-a-vis the manufacturer and the plaintiff; to determine whether there was intervening negligence requires evidence regarding the conduct of the treating physician, not the average physician. *Fraley*, therefore, is not helpful on the issue of the duty of the physician to inform a patient of the known risks of a proposed treatment.

12. The Kentucky General Assembly has, however, expressed itself on the concept of informed consent. KRS 304.40–320 provides:

    **Informed consent—When deemed given.—** In any action brought for treating, examining, or operating on a claimant wherein the claimant's informed consent is an element, the claimant's informed consent shall be deemed to have been given where:

    (1) The action of the health care provider in obtaining the consent of the patient or another person authorized to give consent for the patient was in accordance with the accepted stan-

dard of medical or dental practice among members of the profession with similar training and experience; and

    (2) A reasonable individual, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedure and medically or dentally acceptable alternative procedures or treatments and substantial risks and hazards inherent in the proposed treatment or procedures which are recognized among other health care providers who perform similar treatments or procedures ...

It appears to this Court, from the language of this provision, that Kentucky's legislature contemplated a review of a patient's informed consent from the view of the physician and of the patient. KRS 304.40–320 did not become effective, however, until July 1, 1976, nearly five years after Plaintiff was vaccinated. There is no indication that the statute was intended to be applied retroactively.