**Kimberly Marie SNAWDER, Plaintiff,**

v.

**Stuart P. COHEN, M.D.,
et al., Defendants.**

**Civ. A. No. 89–0629–L (CS).**

United States District Court,
W.D. Kentucky,
Louisville Division.

Oct. 28, 1992.

John M. Mayer, Jr., Clarksville, Ind., for plaintiff.

Gerald R. Toner, Louisville, Ky., for defendants.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the court on the renewed motion of defendant, Dr. Stuart Cohen, for summary judgment.

Plaintiff, Kimberly Marie Snawder, filed this product liability action alleging that she contracted poliomyelitis from an oral polio vaccine administered by Dr. Cohen twenty-one years ago. Snawder claims that Dr. Cohen failed to warn her, or her mother, of the known dangers inherent in the oral polio vaccine's use. In a previous motion for summary judgment, Dr. Cohen contended that (1) he had no duty to warn Snawder of the risks involved in taking the oral polio vaccine, and (2) his alleged failure to warn did not cause Snawder's injuries. In an opinion dated April 20, 1990, Judge Thomas A. Ballantine, Jr. of this district denied Dr. Cohen's motion. *Snawder v. Cohen,* 749 F.Supp. 1473 (W.D.Ky.

1990). In the presently pending motion for summary judgment, Dr. Cohen essentially renews the same two arguments rejected in his first motion for summary judgment, claiming that the disputed issues of material fact have now resolved in Dr. Cohen's favor.

 *First,* Dr. Cohen contends that the deposition testimony of Snawder's mother establishes that his failure to warn did not cause plaintiff's injury and, thus, there is no genuine material fact on the issue of causation. With respect to this argument, Dr. Cohen presents no new supporting evidence, but relies upon the same evidence previously considered. Dr. Cohen again claims that Snawder's mother's testimony reveals that she would have had Snawder vaccinated even if she had been given any warning and that she had her second child, who was born after Snawder, vaccinated with the oral polio vaccine. In his 1990 opinion, Judge Ballantine noted that, in failure to warn cases, the plaintiff was entitled to a rebuttable presumption that she would have heeded a warning and acted to minimize the risk. 749 F.Supp. at 1479. Judge Ballantine concluded that the evidence upon which Dr. Cohen relied was insufficient to rebut this presumption because (1) Snawder's mother's testimony was ambiguous and, although damaging in some places, was rehabilitative in other places, and (2) it was not clear whether Snawder's mother ever had been adequately warned of the danger before deciding to have her second child vaccinated with the same oral vaccine. *Id.* at 1480. We believe that Judge Ballantine's opinion was correct.

*Second,* Dr. Cohen contends that plaintiff cannot satisfy Kentucky law by producing any expert medical testimony establishing that he had any duty to warn of the vaccine's risks. In his previous motion, Dr. Cohen relied upon the deposition testimony of Dr. Auerbach, Snawder's treating physician. Judge Ballantine concluded that Dr. Auerbach's testimony did not "establish, as a matter of *fact,* that standard medical practice in 1971 dictated that physicians not inform patients of the odds of contracting

polio from oral vaccines." *Id.* at 1482 (emphasis added). In addition, Judge Ballantine was not persuaded that, "as a matter of *law*, the standard of practice among doctors is the only relevant consideration." *Id.* (emphasis added). A minority of jurisdictions recently have adopted the view that "a physician's duty to inform his patient is measured, not by a professional medical standard, but by the patient's need for information material to his decision either to accept or to reject the proposed treatment." *Id.* at 1483. Because Kentucky courts had not spoken clearly on the law of informed consent, Judge Ballantine concluded that "[a]s a matter of *law*, this court is not yet convinced that some disclosure may not have been required regardless of the custom of disclosure (or nondisclosure) among local physicians." *Id.* (emphasis added).

In addition to Dr. Auerbach's testimony, Dr. Cohen now relies upon the deposition testimony of Dr. Crawford, a pediatrician, as support for his contention that he had no duty to warn. Dr. Crawford testified as follows on the issue of informed consent:

Q. In 1971 was it common for pediatricians across the country to make known to their patients and to their patient's parents the content of these warnings that were referred to by Mr. Miller in his questions?

A. No sir.

Q. Why was that?

A. Basically it got back to a pattern of general acceptance of reasonable safety and as far as in relationship specifically to the oral polio process, this had been accepted.

The immunizations were mandated by state law in most instances, and the only exemptions to that at that time were religious conscientious objection and the feeling obviously from a polio standpoint the only way to prevent the transmission and recurrence of epidemic was the continuation of essentially mandatory immunization. The risk has always been rather nebulous to determine but extremely slight in our mind, and there was no pattern at that particular point for any effort to say, well, there's one in a million or one in five million or there is a possible chance that something might happen.

[Crawford Depo. 26–27]. Dr. Cohen contends, and we agree, that this testimony allays the concerns articulated in the earlier opinion by providing affirmative expert testimony that informing patients of the risk of contracting polio from the oral vaccine was not the standard of the medical profession at the time Snawder received her vaccine. Dr. Cohen contends that Snawder cannot rebut this testimony with contrary expert evidence and, thus, cannot prove her case.

■ Relying upon *Holton v. Pfingst,* 534 S.W.2d 786 (Ky.1975), Dr. Cohen also contends that the earlier opinion incorrectly suggests that Kentucky courts would adopt the minority position that expert medical testimony is not necessary in informed consent cases. In *Holton,* the court did not decide whether expert medical testimony is necessary in all informed consent cases, but explained that:

[i]t is our view that the cases considering the extent of required disclosure have failed in many instances to relate the requirement to the overall policy consideration. If it is the law, and it surely is, that a physician ordinarily is not liable for an honest mistake in judgment, when he follows acceptable medical standards for examination and diagnosis and treatment, then the extent of disclosure relevant to securing the patient's consent must be evaluated in terms of what the physician knew or should have known at the time he recommended the treatment to the patient.

*Id.* at 789.[1]

When a federal court is confronted with an issue of state law in a diversity action, it

---

1. In his opinion, Judge Ballantine noted *Holton,* but concluded that it did not clearly define the Kentucky law on informed consent. 749 F.Supp. at 1483. He also noted that the Kentucky General Assembly passed a statute in 1976 which "contemplated a review of a patient's informed consent from the view of the physician and of the patient." *Id.* at 1483 n. 12

is the court's responsibility to decide the issue as a Kentucky court would. *Zanella v. City of Grand Rivers,* 687 F.Supp. 1105, 1107 (W.D.Ky.1988). A recent Kentucky Supreme Court guides us in this task. In *Keel v. St. Elizabeth Medical Center,* 842 S.W.2d 860 (Ky.1992),[2] the court concluded that "in most cases, expert medical evidence will likely be a necessary element of the plaintiff's proof in negating informed consent." *Id.* The court also concluded, however, that "expert evidence is not required in all instances where the claim is lack of informed consent" and, thus, in some circumstances, the plaintiff will not need expert medical evidence. The court explained that:

> [i]f we are to analogize consent actions to negligent actions, we must also acknowledge that a failure adequately to inform the patient need not be established by expert testimony where the failure is so apparent that laymen may easily recognize it or infer it from evidence within the realm of common knowledge.

*Id.*

In *Keel,* the plaintiff developed thrombophlebitis after an alleged allergic reaction to contrast dye material used in a CT scan. The plaintiff had not been given any information about the hazards of the procedure; however, the hospital routinely questioned patients undergoing the procedure whether they ever had a reaction to contrast dye materials. *Id.* The court concluded that:

> [i]n the present case, a juror might reasonably infer from the non-technical evidence that St. Elizabeth's utter silence as to risks amounted to an assurance that there were none, whereas its own questions to patients regarding reactions to this specific procedure demonstrate that St. Elizabeth itself, as the health care provider performing the treatment, recognized the substantial possibility of complications, and whereas (subject to further proof) a complication did in fact

result. These inconsistencies are apparent without recourse to expert testimony; we believe this evidence was sufficient to ... protect the plaintiff from adverse summary judgment.

*Id.* Thus, the crucial factor in *Keel* was that the hospital routinely questioned patients about their reactions which plainly evidenced its own recognition of the substantial possibility of such reactions. The court concluded that this routine questioning without any accompanying warning of the substantial risk was an inconsistency evident to any layman and, therefore, expert evidence was unnecessary.

Unlike the plaintiff in *Keel,* the plaintiff here has not offered any non-technical evidence showing that Dr. Cohen's silence with respect to the risks of the oral polio vaccine was inconsistent with his usual actions in administering polio vaccines. In his affidavit, Dr. Cohen has stated that during the relevant times, it was not his practice nor the practice of the medical community to discuss with patients or parents the rare potential adverse reactions to the vaccine. [Ex. A to Dr. Cohen's Memorandum in Support of Motion for Summary Judgment]. Furthermore, the deposition testimony of Dr. Crawford and, to a lesser extent, Dr. Auerbach indicate that physicians did not routinely, or ever, inform or question their patients or parents about the risk of contracting polio from the oral vaccine. Given that Dr. Cohen's actions were consistent with his own practice and standard medical practices, we do not believe his silence can, or should, be interpreted as an assurance that there were no risks attendant to the vaccine.

Furthermore, unlike the contrast dye material in *Keel,* the oral polio vaccine did not create a *substantial* possibility that patients would develop polio from the vaccine. Indeed, the risk of developing polio, as represented by Lederle and known to Dr. Cohen, was extremely slight. The package

---

(citing KRS 304.40–320). The statute contains no indication that it was intended to be applied retroactively, however, and, thus, did not clarify applicable law because plaintiff was vaccinated five years after the statute's effective date. *Id.*

**2.** *Keel* became a final decision on September 16, 1992.

insert accompanying the vaccine stated that the risk was estimated to be "no more than one case ... for every 3,000,000 or more doses" of the vaccine. [*Id.*]

Because there were no apparent inconsistencies between Dr. Cohen's knowledge and actions and was no substantial possibility of developing polio from the vaccine, we conclude that this case does not present special circumstances like *Keel* which would make expert evidence unnecessary. To the contrary, we believe expert medical evidence concerning the standards of the medical community in informing of risks associated with the oral polio vaccine is necessary in this case. Dr. Cohen has presented such evidence which plaintiff has failed to rebut with any expert evidence supporting a contrary opinion. Consequently, plaintiff has failed to establish that there are any genuine questions of material fact concerning Dr. Cohen's duty to warn and Dr. Cohen is entitled to summary judgment.