**Beatrice B. HOLTON, Appellant,**

v.

**Dr. Harry H. PFINGST, Appellee.**

Court of Appeals of Kentucky.

Oct. 3, 1975.

Rehearing Denied Feb. 6, 1976.

William A. Miller, Louisville, for appellant.

John T. Ballantine, Ogden, Robertson & Marshall, Louisville, for appellee.

REED, Chief Justice.

This is a medical malpractice action. The appellant, Beatrice B. Holton, sued the appellee, Dr. Harry H. Pfingst, an ophthalmologist, for his alleged failure to properly disclose to her the risks and hazards involved in a proposed surgical procedure. The trial judge directed a verdict in favor of the physician at the conclusion of Holton's evidence. From the subsequent judgment dismissing her action, Holton appeals. We affirm the judgment because, in our view, her evidence was insufficient to permit a jury to impose liability upon the physician.

In 1960 Holton employed the services of Pfingst for an eye problem which resulted in his performing an operation upon her for a detached retina. The operation was successful. Ordinary acceptable medical practice was followed in the operation, including the placement of a hollow polyethylene ring or tubing around the eye as a part of the operative procedure. Apparently physicians later discovered that this type tubing creates a problem of erosion through the sclera (the white portion of the eye which is a membrane). In procedures thereafter a softer type plastic was used.

According to Holton, her daughter advised her that the eye which had been operated on appeared to have deviated a little. She then visited Pfingst in November 1965. On this occasion Pfingst told her that she had had a polyethylene ring placed around her eye and that it should be removed. According to her, Pfingst advised her on this occasion that it was not an emergency, that she would spend possibly two days in the hospital, and that the procedure would be performed under a local anesthetic.

This surgical procedure, although properly performed, was unsuccessful. When the first piece of tubing was removed causing the loss of vitreous fluid, a hemorrhage occurred inside the eye which finally resulted in loss of the sight of the eye. Bacteria inside the tubing set up an infection when the tubing was cut. Later the eye was enucleated.

According to Pfingst, he made a careful examination when Holton last consulted him. It is uncontradicted that everything Pfingst did in his examination and diagnosis was in accord with acceptable medical standards. Pfingst, who was called on cross-examination as Holton's sole expert evidence, testified that from his examination it was his conclusion that the tubing had not perforated. He stated he had done about a dozen previous tube removal operations but in none of them had there been a perforation. According to Pfingst, good medical practice called for the removing of the tubing under the circumstances in order to prevent erosion into the eye. He concluded from his examination that there was not an erosion into the sclera and was of that impression until the operation revealed otherwise.

Holton argues that her evidence was sufficient to create an issue of fact for the determination of the jury on the "questions of informed consent and false and fraudulent misrepresentation" and that the trial judge erred in directing a verdict in favor of Pfingst.

Although the briefs address themselves to legal principles that are usually discussed in cases where a patient sues a physician for injuries resulting from medical treatment such as the character and quantum of evidence required and on whom the burden of proof or the duty to explain should rest, our consideration impels us to the view that the basic issue of determination of liability cannot be resolved by resort to the pigeon-holing analogies that courts have used in the decision of many of the cases.

Holton asserts that Pfingst was subject to liability to her because either he violated a fiduciary relationship existing between physician and patient when he failed to disclose to her that which he should have disclosed, or his conduct was fraudulent in that he obtained her consent to an operative procedure by failure to disclose a risk or hazard which he knew to exist and about

which he knew she was ignorant, or he failed to observe a standard of conduct required of physicians under the same or similar circumstances in that he failed to inform her of the risks and hazards of the anticipated medical procedure to the same degree as physicians of ordinary prudence and skill would have done. In any event, it would appear that the ultimate issue is whether, upon the evidentiary showing presented, a jury should be permitted, if it chooses to do so, to impose liability upon the physician for some act or omission to act upon his part during the existence of the relationship between the parties.

The issue sometimes arises where the physician is aware that the patient does not understand the nature of the operation or the risk of undesirable consequences involved in it. "Where there is active misrepresentation, this has been held to invalidate the consent, so that there is battery; and the same has been held where there has been mere nondisclosure of consequences which the surgeon knew to be certain to follow. There have, however, been only a few decisions finding battery where there was failure to disclose only a known risk of the treatment." W. Prosser, Handbook of the Law of Torts, 105–106 (4th ed. 1971).

"The greater number of decisions now regard the failure to disclose a mere risk of treatment as involving a collateral matter, and negligence rather than intent, and so have treated the question as one of negligent malpractice only, which brings into question professional standards of conduct." Prosser, supra at 106.

■ It is difficult to logically analogize the situation with traditional concepts of assault and battery. The physician intends no harm and the relationship itself inherently contemplates contact rather than trespass. The same conditions are present when an analogy is attempted to the law of fraud and deceit. In most instances the object of the actor (physician) is to benefit, alleviate or cure rather than to take advantage. Hence, we are persuaded that the

prevailing view to the effect that the action, regardless of its form, is in reality one for negligence in failing to conform to a proper professional standard is the soundest approach. See Prosser, supra at 165.

If this prevailing view is applied to the so-called doctrine of "informed consent," about which so much has been written in the medical malpractice texts and academic literature, the issue then appears as a policy question concerning the extent and kind of evidence that should be required before a jury is permitted to weigh and evaluate the proven facts and determine liability or exoneration.

Despite the current trend in the law to impose strict liability on manufacturers and sellers of products for the protection of consumers, the law has, nevertheless, continued to afford the medical profession and other learned professions a privilege which it has ordinarily refused to other groups even before the strict liability trend, and that is the freedom to set their own legal standards of conduct. The policy justification implicitly advanced is the respect which the courts have had for the learning of a fellow profession accompanied by reluctance to overburden it "with liability based on uneducated judgment." Prosser, supra at 165.

Some courts categorically require the patient to produce expert testimony as to what disclosure of risks or hazards should be made. Other courts hold that experts are unnecessary and that lay witness testimony can establish a submissible case of failure to disclose a risk or hazard of treatment which a physician knew or should have known. See 61 Am.Jur.2d, Physicians, Surgeons, Etc., Sec. 154, p. 9 (Supp.1975). Other courts have ordinarily required expert evidence by the plaintiff on the issue of the extent of disclosure required except in those instances where the court determined that the necessity of disclosure of the risk involved was "too clear to require expert medical testimony." Am.Jur., supra. Some of the text discussions although un-

supported by decided cases have advocated a shift of burden approach whereby if the patient produces evidence of a failure to disclose a particular risk or hazard, then the burden shifts to the physician to excuse the failure by proof of professional standards which would seek to establish disclosure was either not required or was regarded as not in the best interest of the patient under the peculiar fact situation.

 In the instant case, we are persuaded that it is unnecessary to determine whether expert evidence should be required in all instances where the claim is lack of informed consent to medical treatment. It is our view that the cases considering the extent of required disclosure have failed in many instances to relate the requirement to the overall policy consideration. If it is the law, and it surely is, that a physician ordinarily is not liable for an honest mistake in judgment, when he follows acceptable medical standards for examination and diagnosis and treatment, then the extent of disclosure relevant to securing the patient's consent must be evaluated in terms of what the physician knew or should have known at the time he recommended the treatment to the patient.

In the present case, it is undisputed that the physician's examination and diagnostic procedures were in accordance with acceptable medical practice at the time he made them. He advised his patient, based on his medical judgment, as a result of his examination and diagnostic procedures. There is no evidence, lay or expert, that he failed to disclose that which he knew or should have known. His conduct was such that giving the plaintiff's evidence all favorable inferences to her that could be drawn from it, he was guilty, if anything, of only an honest mistake in judgment. In our view, in such an instance when the necessity of the relationship is considered and the present status of medical science is weighed, the physician should not be subject to liability. We have concluded that

the trial court correctly directed a verdict in favor of the physician in this case.

The judgment is affirmed.

REED, C. J., and CLAYTON, JONES, PALMORE, STEPHENSON and STERNBERG, JJ., sitting.

All concur.