Richard MITCHELL, M.D., Appellant,

v.

Thomas HADL, Appellee.

· No. 90–SC–690–DG.

Supreme Court of Kentucky.

Sept. 26, 1991.

Roy Kimberly Snell, Carol Dan Browning, Lively M. Wilson, Stites & Harbison, Louisville, for appellant.

Richard J. Head, Carl, Head & Triplett, Louisville, for appellee.

LAMBERT, Justice.

This Court granted discretionary review of the opinion of the Court of Appeals reversing the trial court's summary judgment for appellant. While not presented by the parties as such, we believe the decisive issue is whether appellee presented sufficient evidence of appellant's negligence to avoid summary judgment.

Appellee was seen by his family physician, Dr. Christian, complaining of abdominal pain. He was referred to appellant, Dr. Mitchell, a Board–Certified general surgeon, for further examination. To verify a provisional diagnosis of appendicitis, exploratory surgery was performed and the appendix was found to be normal. In the course of the surgery, however, Dr. Mitchell discovered a nodule on appellee's liver and a mass on the head of his pancreas. A biopsy was performed to determine whether the liver was cancerous. The surgical incision was closed and appellee recovered from this procedure without any complication.

After the surgery, but before the biopsy result was received, appellant told Dr. Christian and appellee's family that appellee had carcinoma of the pancreas with metastatic disease to the liver and would die within three to six months. Appellee was informed of this by his family and Dr. Christian.

About two days after surgery, while appellee was still hospitalized, Dr. Christian received the biopsy report. The report was negative for cancer and appellee was so informed. However, in a conversation with appellee's family on that same day, appellant, Dr. Mitchell, indelicately reiterated his original diagnosis and disputed the accuracy of the biopsy report. He said, "I still stand by my first statement. I've seen too much of it. I know what it is. He has three to six months to live, and time will tell." Appellant also told appellee's family that further tests would be necessary to reach a final diagnosis. This information was reported to appellee and shortly there-

after, he was transferred to the Veterans' Administration Hospital. In due course, it was determined that appellee did not have cancer of the pancreas or liver and that the negative biopsy report was accurate.

Appellee filed a complaint in the Jefferson Circuit Court against appellant, Dr. Mitchell, alleging negligence in the diagnosis of cancer without waiting for the biopsy report and negligence in reiterating the original diagnosis after the biopsy report showed it to be incorrect. Appellee alleged that appellant failed to meet the standard of care required of reasonably competent physicians and that as a result, he suffered severe emotional distress.

About two years after litigation was commenced and after the parties had engaged in considerable discovery, appellant moved for summary judgment and supported his motion with an affidavit which does not differ in any material respect from appellee's version of the facts. The trial court sustained appellant's motion with a typical CR 56.03 final order and appellee appealed to the Court of Appeals.

In the Court of Appeals, the issue presented was whether the "physical contact" requirement for recovery of damages for negligent infliction of emotional distress was satisfied by the surgical procedure and biopsy performed. A divided panel of the Court of Appeals reversed the summary judgment. After taking account of this Court's decision in *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980), and other authorities, the Court held that the physical contact requirement was satisfied. It said:

"As long as Hadl's mental distress was caused by Dr. Mitchell's negligent conduct and there was physical contact related to the negligent act, a cause of action for negligent infliction of emotional distress had been set out. In the instant case, the alleged negligent misdiagnosis of terminal cancer was related to and the direct result of the surgical biopsy."

In his motion for discretionary review, appellant directly attacked the opinion of the Court of Appeals contending that the

physical contact requirement is not satisfied unless such contact is causally related to the claim of emotional distress. Upon our grant of discretionary review, the issue was similarly presented. In sum, the parties debate the requirements of *Deutsch v. Shein* and other authorities.

■ Ordinarily, this Court confines itself rather closely to deciding only those issues which the parties present. We take the view that counsel and the courts below have sufficiently identified the issues; that we need not redefine the question in the last stage of the litigation. However, we are constrained by no rule of court or constitutional provision to observe this procedure, and on rare occasions, the facts mandate a departure from the normal practice. When the facts reveal a fundamental basis for decision not presented by the parties, it is our duty to address the issue to avoid a misleading application of the law. This is such a case.

■ To prevent any implication to the contrary, we find no fault with the Court of Appeals for having decided only the issue presented by the parties. It is our view, however, that there is a preliminary issue of a routine nature which is decisive. This issue is whether appellant, Dr. Mitchell, violated any duty owed appellee or whether the medical opinion given fell below the recognized standard of care.

■ In any negligence case, it is necessary to show that the defendant failed to discharge a legal duty or conform his conduct to the standard required. W. Prosser, LAW OF TORTS § 30 (1971). In the arena of medical negligence, controlling Kentucky authority imposes upon a physician the duty to "use that degree of care and skill which is expected of a reasonably competent practitioner in the same class to which [the physician] belongs acting in the same or similar circumstances." *Blair v. Eblen,* Ky., 461 S.W.2d 370, 373 (1970). Other controlling authority recognizes the special relationship between physician and patient and imposes upon the former a great duty of fidelity. In *Adams v. Ison,* Ky., 249 S.W.2d 791 (1952), the Court described the relationship between physician and patient in terms which mandate full disclosure. The Court said:

"The relationship of a patient to his physician is by its very nature one of the most intimate. Its foundation is the theory that the physician is learned, skilled and experienced in the afflictions of the body about which the patient ordinarily knows little or nothing but which are of the most vital importance to him. Therefore, the patient must necessarily place great reliance, faith and confidence in the professional word, advice and acts of his doctor. It is the physicians' duty to act with the utmost good faith and to speak fairly and truthfully at the peril of being held liable for damages for fraud and deceit." *Id.* at 793.

From the foregoing, it is clear that in arriving at a diagnosis, a physician is required to perform in a reasonably competent manner *and* fully disclose his findings on examination and the opinions he holds.

■ In the instant case, and despite the negative biopsy report, appellant held an opinion, based on personal observation of the organs involved and his experience in diagnosing such conditions, that appellee had liver and pancreatic cancer. Unless his opinion fell below the standard of reasonable competence, and the record is without any such evidence, it was his duty to make a full disclosure to appellee. Said otherwise, appellant had no duty to disclose an unreasonably held opinion, but was otherwise required to make a full disclosure. When faced with a *decision to timely* inform a patient of diagnostic opinion or withhold such information to more fully consider the foreseeable consequences of an erroneous opinion, sound public policy dictates that a physician choose the former. While it may appear that the misdiagnosis of a benign condition as malignant is comparable to the diagnosis of a malignant condition as benign, a profound distinction exists. While the former may produce emotional distress, the latter may result in a failure to obtain treatment, a manifestly more serious consequence.

In final analysis, proper application of negligence law requires courts to view the facts as they reasonably appeared to the party charged with negligence. We are not at liberty to impose liability based on hindsight. *Engle v. Clarke*, Ky., 346 S.W.2d 13 (1961); W. PROSSER, LAW OF TORTS Section 31 at 146 (1971). Moreover, it would disserve sound public policy to announce any rule of law which would likely result in the abridgement of the exchange of vital information between physicians and patients. *Holton v. Pfingst*, Ky., 534 S.W.2d 786 (1975).

Upon examination of appellee's internal organs, appellant formed a medical opinion, the reasonableness of which has not or likely could not be contradicted due to appellant's unique perspective. Upon receipt of the biopsy report, appellant encountered a dilemma. He could have accepted the biopsy report at face value and refrained from any repetition of his own opinion or he could have disclosed the biopsy report and reiterated his own view. As a physician charged with the proper diagnosis of a physical condition, and with proper appreciation of the risks involved, appellant chose the latter course. Considering all relevant factors as required by *Holton v. Pfingst, supra*, we are unable to discover any negligence on the part of appellant.

For the reasons set forth herein, the decision of the Court of Appeals is reversed and the judgment of the Jefferson Circuit Court reinstated.

STEPHENS, C.J., and LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

COMBS, J., dissents and would affirm the Court of Appeals on the ground that the requirements of the "contact rule" were satisfied by the exploratory surgery.