**Leslie KEEL, Appellant,**

v.

**ST. ELIZABETH MEDICAL CENTER, Appellee.**

**No. 90–SC–689–DG.**

Supreme Court of Kentucky.

June 4, 1992.

As Modified on Denial of Rehearing, Sept. 16, 1992.

David E. Davidson, Covington, for appellant.

Gerald E. Benzinger, David V. Kramer, Deters, Benzinger & Lavelle, P.S.C., Covington, for appellee.

COMBS, Justice.

The issue in this medical malpractice case is whether expert testimony is necessary to support a patient's claim that a medical procedure was done without his informed consent, where the patient was given no information about the procedure, and where medical complications allegedly resulted. In the absence of expert testimony on this issue, the trial court granted summary judgment to the defendant medical center. The Court of Appeals affirmed, and we granted discretionary review.

When considering a summary judgment, we view the evidence in a light most favorable to the party opposing summary judgment, in this case the plaintiff/appellant. Pursuant to a written order from his personal physician, appellant Keel presented at St. Elizabeth for a CT scan, which was

to include the injection of a contrast dye material. Prior to the test, he was given no information concerning any risks attendant to the procedure. He may have provided information in response to routine questions concerning allergies, illnesses, medications, and "whether the patient has ever had an x-ray or CT scan or undergone any tests where contrast materials were used and if so whether the patient has had any previous reactions to contrast materials, the type of reaction and the type of contrast previously used." The dye was injected, and the scan conducted.

Later, Keel developed a condition diagnosed as thrombophlebitis at the site of the injection. Keel was prepared to offer expert testimony that the thrombophlebitis was secondary to the intravenous injection, but his expert was unable to say whether or not the injection was negligently administered. The plaintiff was prepared to offer no medical testimony with respect to the issue of informed consent.

As we perceive it, Keel's argument reduces to the following thesis: a) lack of informed consent may be differentiated from medical negligence, and recovery may be had upon proof of lack of informed consent, damages, and causation; b) in the circumstances of this case, expert medical testimony is not required in order to prove the absence of informed consent. The position of the hospital is that distinguishing the issues makes no real difference, and that the question of informed consent, like the question of negligence, must be determined against the standard of practice among members of the medical profession.

On the issue of informed consent, this Court has stated that "the action, regardless of its form, is in reality one for negligence in failing to conform to a proper professional standard...." *Holton v. Pfingst*, Ky., 534 S.W.2d 786, 788 (1975). In that case, the plaintiff alleged that a physician had failed to disclose a risk which he had known to exist, or had failed to inform her of the risks of a medical procedure to the same degree as physicians of ordinary prudence and skill would have done. It is clear from the opinion that the

physician had not informed the patient regarding the particular complication which eventuated in that case. It is not clear, however, whether the physician had mentioned other risks or, on the other hand, had said nothing. The court did note that he had "advised his patient, based on his medical judgment, as a result of his examination and diagnostic procedures." *Id.* at 789. In affirming a directed verdict for the defendant physician, for want of expert testimony, the *Holton* court stated:

> [W]e are persuaded that it is unnecessary to determine whether expert evidence should be required in all instances where the claim is lack of informed consent to medical treatment. It is our view that the cases considering the extent of required disclosure have failed in many instances to relate the requirement to the overall policy consideration. If it is the law, and it surely is, that a physician ordinarily is not liable for an honest mistake in judgment, when he follows acceptable medical standards for examination and diagnosis and treatment, then the extent of a disclosure relevant to securing the patient's consent must be evaluated in terms of what the physician knew or should have known at the time he recommended the treatment to the patient.

*Id.* at 789. St. Elizabeth argues that the *Holton* decision implies that expert testimony is necessary in most informed consent actions, as in most medical negligence actions.

KRS 304.40–320 appears to adopt the same approach:

> In any action brought for treating, examining, or operating on a claimant wherein the claimant's informed consent is an element, the claimant's informed consent shall be deemed to have been given where:
>
> (1) The action of the health care provider in obtaining the consent of the patient or another person authorized to give consent for the patient was in accordance with the accepted standard of medical or dental practice among members of

the profession with similar training and experience; and

(2) A reasonable individual, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedure and medically or dentally acceptable alternative procedures or treatments and substantial risks and hazards inherent in the proposed treatment or procedures which are recognized among other health care providers who perform similar treatments or procedures....

■ We must agree with St. Elizabeth that, in most cases, expert medical evidence will likely be a necessary element of the plaintiff's proof in negating informed consent. In view of the special circumstances of this case, however, we believe that neither *Holton* nor KRS 304.40–320 requires Keel to produce expert testimony on this issue. With respect to *Holton*, we answer the question left open there, and hold that expert evidence is not required in all instances where the claim is lack of informed consent. Here, we find it significant that St. Elizabeth offered Keel *no information whatsoever* concerning any possible hazards of this particular procedure, while at the same time the hospital admits that it routinely questions every patient about to undergo a dye injection as to whether he/she has had *any previous reactions to contrast materials*. If we are to analogize consent actions to negligence actions, we must also acknowledge that a failure adequately to inform the patient need not be established by expert testimony where the failure is so apparent that laymen may easily recognize it or infer it from evidence within the realm of common knowledge. *Cf. Jarboe v. Harting*, Ky., 397 S.W.2d 775 (1965); *Butts v. Watts*, Ky., 290 S.W.2d 777 (1956). In the present case, a juror might reasonably infer from the non-technical evidence that St. Elizabeth's utter silence as to risks amounted to an assurance that there were none, whereas its own questions to patients regarding reactions to this specific procedure demonstrate that St. Elizabeth itself, as the health care provider performing the treatment, recognized the substantial possibility of complications, and

whereas (subject to further proof) a complication did in fact result. These inconsistencies are apparent without recourse to expert testimony; we believe this evidence was sufficient to satisfy the standards of *Holton, supra,* and of KRS 304.40–320, and to protect the plaintiff from adverse summary judgment.

■ We note incidentally the suggestion (not strictly an issue) that St. Elizabeth might not have a duty to inform Keel, on the theory that this responsibility lay with his personal physician. Under KRS 304.-40–320, the duty is upon "health care providers"; and KRS 304.40–260 expressly includes hospitals within the definition of that term. We have no doubt that the duty exists and is breached at peril.

The judgment is reversed, and this matter is remanded to the Kenton Circuit Court for further proceedings consistent with this opinion.

LAMBERT and WINTERSHEIMER, JJ., concur.

LEIBSON, J., concurs in result only, and files a separate concurring opinion.

RONALD M. SULLIVAN, Special Justice, dissents by separate opinion in which STEPHENS, C.J., and SPAIN, J., join.

LEIBSON, Justice, concurring.

I concur in results only. I respectfully disagree with some of the reasoning in the Majority Opinion, and, therefore, write separately to express my views on these matters.

## I. INFORMED CONSENT

"Lack of informed consent" is not, per se, a tort. It is only a term useful in analyzing medical malpractice claims involving two different torts: (a) the type of assault and battery which occurs when a physician performs an unauthorized procedure, i.e., "where a patient *has not consented* to the particular medical treatment which was given"; and (b) the type of negligence which occurs when a physician

has not made a *"proper disclosure* of the risks inherent in a treatment." Louisell and Williams, *Medical Malpractice,* Vol. 2, Sec. 22.04. (Emphasis original.)

In this case the issue is one of "proper disclosure." This then is a negligence case subject to the usual rules pertaining to medical negligence cases, which means the claimant needs an expert to prove failure to exercise reasonable care, i.e., lack of a "proper disclosure," unless the risk is so substantial a lay jury could conclude from the circumstances presented that reasonable care required disclosure, or unless the medical testimony gives rise to such an inference; then it is a *res ipsa loquitur* case. *See Perkins v. Hausladen,* Ky., 828 S.W.2d 652 (1992).

This case was decided prematurely, on summary judgment, before it was clear that the claimant needed no expert because he had a *res ipsa* case. The claimant alleges he was given no information whatsoever about the risk of complications and the danger of thrombophlebitis from the procedure. It may well be that questions to the defendant or other doctors in the case will show a risk of harm so substantial that a lay jury could reasonably infer negligence from failure to warn even though the claimant employs no expert to testify the defendant was negligent.

Therefore, I agree that the case should be reversed.

## II. STATUTORY INFORMED CONSENT

KRS 304.40–320 should have no bearing whatever on this case because it is a plainly unconstitutional legislative intrusion into liability for common law wrongs (negligence and assault and battery) protected from such intrusion by our Kentucky Constitution, Secs. 14, 54 and 241. Constitutionally, the statute cannot define the duty.

Our Opinion should not give aid and comfort to an unconstitutional statute by deigning to discuss its application.

Therefore, I concur in results only.

RONALD M. SULLIVAN, Special Justice, dissenting.

## A. INTRODUCTION

The sole issue presented on this appeal is whether a plaintiff can survive a motion for summary judgment in an informed consent action when that plaintiff has offered no expert testimony on the issue of whether or not the defendant health care provider breached its duty to inform. The Opinion of the Court holds that there are informed consent cases which do not require expert testimony on the health care provider's duty of care and that this case fits into that category. I respectfully dissent from that opinion.

On June 1, 1985, appellant, Leslie Wayne Keel ("Keel"), was sent to appellee, St. Elizabeth Medical Center ("St. Elizabeth"), by his physician for a CT scan. A CT scan is an x-ray procedure in which a patient may be injected with contrast material (dye) just prior to the CT scan. As the first step in this procedure, St. Elizabeth personnel asked Keel questions about his physical condition, including any known allergies or prior reactions to contrast material. St. Elizabeth stated that it would not have performed a CT scan had Keel's answers contraindicated the procedure, which Keel's answers did not do. Subsequent to the CT scan, Keel developed thrombophlebitis, allegedly from the injection of the contrast material, and brought this lawsuit against St. Elizabeth alleging negligent failure to inform him of the risks and negligent injection of the contrast material. The first of the two allegations is the one with which this appeal is concerned.

## B. INFORMED CONSENT ACTIONS ARE BASED ON A NEGLIGENCE THEORY

In his appellate brief, Keel attempts to couch this cause of action in battery and "the right of individuals to make decisions about their own bodies". This contention disregards the holding of *Holton v. Pfingst,* Ky., 534 S.W.2d 786 (1975), which held that such an action lies in negligence:

> It is difficult to logically analogize the situation with traditional concepts of as-

sault and battery. The physician intends no harm and the relationship itself inherently contemplates contact rather than trespass.... Hence, we are persuaded that the prevailing view to the effect that the action, regardless of its form, is in reality one for negligence in failing to conform to a proper professional standard is the soundest approach.

*Holton* at 788.

The only exception to this rule is when no consent is given by the patient. See Clark, *Informed Consent in Kentucky After The Medical Malpractice Insurance and Claims Act of 1976,* 65 Ky.L.J. 526, 528–529 (1976–1977), and cases therein cited. The instant case does not lie in battery because Keel consented to the CT scan when he walked into St. Elizabeth and admitted himself for that procedure. Whether or not the consent given by Keel was an informed consent is the issue Keel raised when he brought this action.

## C. STANDARD OF CARE APPLIED IN AN INFORMED CONSENT CASE

The *Holton* court established the standard which would be applied to the conduct of the health care provider in informed consent cases:

Despite the current trend in the law to impose strict liability on manufacturers and sellers of products for the protection of consumers, the law has, nevertheless, continued to afford the medical profession and other learned professions a privilege which it has ordinarily refused to other groups even before the strict liability trend, and that is the freedom to set their own legal standards of conduct. The policy justification implicitly advanced is the respect which the courts

have had for the learning of a fellow profession accompanied by reluctance to overburden it "with liability based on uneducated judgment." Prosser [*Handbook of the Law of Torts* (4th Ed.1971)], supra at 165.

*Holton* at 788.

The application of this standard to the conduct of the alleged negligent health care provider is essential in an informed consent case because in Kentucky the focus of an informed consent case is on the conduct of the health care provider:

If it is the law, and it surely is, that a physician ordinarily is not liable for an honest mistake in judgment, when he follows acceptable medical standards for examination and diagnosis and treatment, then *the extent of disclosure relevant to securing the patient's consent must be evaluated in terms of what the physician knew or should have known at the time he recommended the treatment to the patient.*

*Id.* at 789 (emphasis added). This concentration on the conduct of the health care provider has grown even stronger since the enactment of the informed consent statute, KRS 304.40–320 [1].

Keel has claimed that this statute should be considered an affirmative defense that the defendant must raise. This assertion by Keel is contrary to the language of the statute. The statute does not permit a plaintiff to come into court with no expert testimony and shift the burden of proof to the defendant to produce expert testimony as an affirmative defense to an informed consent case. Statutes that establish affirmative defenses do so expressly. See, e.g., KRS 411.010 (provocation as a defense to assault and battery), KRS 372.090 (cham-

---

**1.** In any action brought for treating, examining, or operating on a claimant wherein the claimant's informed consent is an element, the claimant's informed consent shall be deemed to have been given where:

(1) The action of the health care provider in obtaining the consent of the patient or another person authorized to give consent for the patient was *in accordance with the accepted standard of medical or dental practice among members of the profession with similar training and experience;* and

(2) A reasonable individual, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedure and medically or dentally acceptable alternative procedures or treatments and substantial risks and hazards inherent in the proposed treatment or procedures *which are recognized among other health care providers who perform similar treatments or procedures;* ... (emphasis added).

perty as a defense to adverse possession), KRS 411.045 (truth as a defense to defamation); as do statutes which shift the burden, e.g., KRS 13A.140 (shifts burden to an administrative agency to prove the validity of a challenged administrative regulation), and KRS 207.135 (shifts burden to a defendant-employer in a disability-discrimination action to prove that testing for HIV is a bona fide occupational qualification). KRS 304.40–320 in effect states the two elements for a prima facie informed consent case.

The legislative intent also supports this interpretation of KRS 304.40–320. The Governor's Hospital and Physicians Professional Liability Insurance Advisory Committee, which drafted KRS 304.40–320, made the following statement concerning that statute in § II at page 5 of its Report to the Governor:

> This section will legislatively require that "informed consent" cases be proven by expert testimony relating to accepted standards of practice of the profession in providing information, and further require that an objective standard be applied in determining whether that information would likely have resulted in any different decision by the plaintiff.
>
> The purpose of this section is to eliminate the possibility of (1) a jury's speculating after the fact that the health care provider should have told the plaintiff of a given risk even though accepted professional standards would not require such advance information, and (2) a plaintiff's testifying that had he known of an

unforeseeable or unlikely injury he would not have consented to the recommended health care.

In sum, KRS 304.40–320 mandates that the plaintiff satisfy two requirements in an informed consent case. First, the plaintiff must prove that the disclosure made by the health care provider did not satisfy the accepted standard of the members of that profession with similar training and experience. Second, plaintiff must prove that a reasonable individual would not understand the procedures, acceptable alternatives, and the substantial risks inherent in the proposed treatment from the health care provider's disclosures.

## D. EXPERT TESTIMONY IS REQUIRED TO ESTABLISH A PRIMA FACIE INFORMED CONSENT CASE.

The first of the two above stated requirements is concerned with the health care provider's duty to disclose. A plaintiff in an informed consent action must prove that this duty has been breached. KRS 304.40–320(1) clearly requires that such a breach can only be proven by establishing that the health care provider did not conform to the accepted standard of medical practice among members of that profession with similar training and experience. A plaintiff cannot satisfy this requirement without producing evidence from a medical expert defining the accepted medical standard.

Two jurisdictions, Florida[2] and North Carolina[3], have statutes similar to KRS

---

**2.** Florida's statute, FSA § 766.103(3), reads:

> No recovery shall be allowed in any court in this state against any physician ... in an action brought for treating, examining, or operating on a patient without his informed consent when:
>
> (a) 1. The action of the physician ... in obtaining the consent of the patient or another person authorized to give consent for the patient was in accordance with an accepted standard of medical practice among members of the medical profession with similar training and experience in the same or similar medical community; and
>
> 2. A reasonable individual, from the information provided by the physician ... under the circumstances, would have a general understanding of the procedure, the medically

acceptable alternative procedures or treatments, and the substantial risks and hazards inherent in the proposed treatment or procedures, which are recognized among other physicians ... and the same or similar community who perform similar treatments or procedures; or

> (b) The patient would reasonably, under all the surrounding circumstances, have undergone such treatment or procedure had he been advised by the physician ... in accordance with the provisions of paragraph (a).

**3.** North Carolina's informed consent statute, NCGS § 90–21.13, provides in pertinent part:

> (a) No recovery shall be allowed against any health care provider upon the grounds that the health care treatment was rendered with-

304.40–320 in which expert testimony is required in informed consent cases. In interpreting the Florida statute, the Florida Court of Appeals determined that expert testimony is required:

> The duty of the physician to inform and the extent of the information which may be required varies in each case depending upon the particular circumstances. *Bly v. Rhoads*, 216 Va. 645, 222 S.E.2d 783 (1976). The factors involved in making this determination are often complicated and technical, and in any event involve considerations beyond the expertise of the ordinary layman who is uneducated in medicine. Consequently, we have no hesitation in following the lead of our sister court in *Ditlow v. Kaplan*, 181 So.2d 226 (Fla.3d DCA 1966), by holding that expert testimony is required in informed consent cases to establish whether a reasonable medical practitioner in the community would make the pertinent disclosures under the same or similar circumstances. Our ruling accords with those of most courts which have considered this issue. Annot., 52 A.L.R.3d 1084 (1973).

*Thomas v. Berrios*, 348 So.2d 905, 907–908 (1977).

The Court of Appeals of North Carolina in interpreting its state's statute held that it required expert medical evidence in informed consent cases:

> Subsection (a)(1) establishes the standard required of health care providers in obtaining the consent of the patient to be "in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same

or similar communities." The subsection appears to answer the question left unresolved in *McPherson [v. Ellis*, 305 N.C. 266, 287 S.E.2d 892 (1982)], supra, and to require the use of expert medical testimony by the party seeking to establish the standard.

*Nelson v. Patrick*, 58 N.C.App. 546, 293 S.E.2d 829 (1982).

The Opinion of the Court has attempted to elude this requirement by claiming this case is one in which expert medical evidence is not required. In support of this claim, the Opinion of the Court cites the line of cases which hold that medical expert evidence is not required when the common knowledge or experience of layman is extensive enough to recognize or infer negligence from the facts. *Butts v. Watts*, Ky., 290 S.W.2d 777 (1956) (dentist, in extracting a tooth, left tooth fragments in the socket which were easily discovered by another dentist); *Johnson v. Vaughn*, Ky., 370 S.W.2d 591 (1963) (doctor, who was treating patient suffering from gunshot wound in the throat, left the hospital while patient was still in danger and then refused to release patient to another doctor, who was at hospital, for approximately one hour); and *Jarboe v. Harting*, Ky., 397 S.W.2d 775 (1965) (doctor misdiagnosed pregnant patient as having a uterine tumor and failed to perform pregnancy test before surgery—doctor admitted he should have performed the pregnancy test). The facts of the instant case are not such that the common knowledge and experience of laymen are extensive enough to recognize or infer negligence from the facts.

---

out the informed consent of the patient or the patient's spouse, parent, guardian, nearest relative or other person authorized to give consent for the patient where:

(1) The action of the health care provider in obtaining the consent of the patient or other person authorized to give consent for the patient was in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities; and

(2) A reasonable person, from the information provided by the health care provider un-

der the circumstances, would have a general understanding of the procedures or treatments and of the usual and most frequent risks and hazards inherent in the proposed procedures or treatments which are recognized and followed by other health care providers engaged in the same field of practice in the same or similar communities; or

(3) a reasonable person, under all the surrounding circumstances, would have undergone such treatment or procedure had he been advised by the health care provider in accordance with the provisions of subdivisions (1) and (2) of this subsection.

The test performed on Keel was a computed tomography scan, known as a CT scan, which is "the recording of internal body images at a predetermined plane by means of a tomograph". Dorland's Illustrated Medical Dictionary, page 1374 (26th Ed.1985). The average layperson does not possess knowledge or experience extensive enough to know whether or not some, if any, substantial risks are involved in this procedure. An initial interview was given by Keel in which St. Elizabeth obtained certain information from Keel. The information obtained from Keel in that interview may have been enough to satisfy St. Elizabeth that there was no need to disclose anything to Keel. No layperson could tell you whether or not the information obtained from Keel was sufficient to abrogate the duty to warn, and laypersons should not be given the power to do so without the introduction of expert medical evidence.

The Opinion of the Court relies on the fact that St. Elizabeth made no disclosure to Keel as to the risks involved in a CT scan. For all the court knows, there may be no duty to disclose any risks to the patient because no risks exist or because those risks that do exist are so inconsequential as to be immaterial. I do not think there is a single member of this court who knows what the chances are that one will contract thrombophlebitis when injected with contrast material during a CT scan. Nor do they know any of the risks involved in a CT scan. Yet, they hold as a matter of law that a failure to disclose any risks to a patient about to undergo a CT scan enables a claim of lack of informed consent to go to the jury. On the contrary, expert testimony is necessary to supply the court or the jury with this information. *Bly v. Rhoads*, 216 Va. 645, 222 S.E.2d 783 (1976), emphasizes the reason behind this necessity for expert evidence in an informed consent case:

> The matters involved in the disclosure syndrome, more often than not, are complicated and highly technical. To leave the establishment of such matters to lay witnesses, in our opinion, would pose dangers and disadvantages which far outweigh the benefits and advantages a "modern trend" rule would bestow upon patient-plaintiffs. In effect, the relaxed "modern trend" rule permits lay witnesses to express, when all is said and done, what amounts to medical opinion. Undoubtedly, such a rule would cause further proliferation of medical malpractice actions in a situation already approaching a national crisis. This is a result which, if at all possible consonant with sound judicial policy, should be avoided.

> We believe the better rule, which we now adopt, is to require a patient-plaintiff to show by qualified medical experts whether and to what extent information should be disclosed by the physician to his patient ...

*Bly* at 650–651, 222 S.E.2d 783. The majority view in the courts of this country follows the reasoning in *Bly* and requires expert testimony to prove a deviation from the accepted standard of disclosure. See Annot., 52 A.L.R.3d 1084, "Necessity and Sufficiency of Expert Evidence to Establish Existence of Physician's Duty to Inform Patient of Risks of Proposed Treatment".

Inherent in an informed consent cause of action is the fact that the health care provider, whether he or she is a doctor, nurse, or some other type of medical specialist, must exercise discretion when making disclosures to patients. If that health care provider determines that a risk is not material or that it is in the patient's best interest that the risk not be disclosed, he or she may choose not to inform the patient of that risk. It is not the province of laypersons to decide if that choice constitutes negligence. Expert testimony is required to evaluate the procedure and the undisclosed risks involved in that procedure to determine if the duty to inform the patient was breached. See *Holton*, supra, 534 S.W.2d at 788. The position of the Opinion of the Court that expert testimony is unnecessary if a plaintiff alleges no risks were disclosed assumes that there are substantial risks to be disclosed in every case. There is no legal or medical support for such an argument.

I would affirm the opinion of the Court of Appeals.

STEPHENS, C.J., and SPAIN, J., join in this dissent.