RENDERED:  JULY 29, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-0439-MR

ANTHONY WHITE                                                APPELLANT

v.          APPEAL FROM CLARK CIRCUIT COURT
            HONORABLE BRANDY O. BROWN, JUDGE
            ACTION NO. 19-CI-00011

COMMONWEALTH ANESTHESIA                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND L. THOMPSON, JUDGES.

CETRULO, JUDGE:  Appellant Anthony White ("White") appeals from a Clark

Circuit Court order granting summary judgment in favor of Appellee

Commonwealth Anesthesia.  Following a careful review of the briefs, the record,

and the law, we affirm.

# BACKGROUND

On January 7, 2018, White presented to the Clark Regional Medical Center ("Hospital") in Winchester, Kentucky, with a foreign object stuck in his throat. White arrived in stable condition and in no apparent distress. After an examination, an emergency room ("ER") physician recommended an esophagogastroduodenoscopy ("endoscopy") to remove the object; the Hospital contacted Dr. David McMenamin[1] to perform the endoscopy.

At 9:29 p.m., Ben Small, a certified registered nurse anesthetist ("CRNA Small"), an employee of Commonwealth Anesthesia, completed the Anesthesia Pre-Op Protocol for White. At 9:40 p.m., CRNA Small obtained White's written informed consent for the procedure. At 9:50 p.m., the ER staff performed a standard pre-procedure "timeout" to verbally verify – with the patient – his name, the procedure being performed, and the patient's consent to proceed. According to the medical record, all were confirmed.

The exact time of Dr. McMenamin's arrival is unclear, but White claims that Dr. McMenamin came into the ER "screaming and yelling" at White. White claims Dr. McMenamin stated that he "hated" him for causing him to have

---

[1] Dr. McMenamin is not an employee of Commonwealth Anesthesia. Dr. McMenamin is not now and never has been a defendant in this case.

to come into the hospital during his off hours.[2]  White claims that "[a]s a result of the rant and animosity" from Dr. McMenamin, he attempted to revoke his consent for the procedure, but CRNA Small anesthetized him before he could withdraw his consent.  White later claimed that if he had not "gone under" he would have traveled to Lexington for the procedure.  Commonwealth Anesthesia presented affidavit testimony of another CRNA[3] who stated that 1) CRNA Small "met the standard of care in all respects and that the anesthesia was safe and appropriate"; and 2) that active cooperation from the patient was necessary to properly perform the anesthesia for this procedure.[4]  White did not rebut or contest that testimony.

The endoscopy was a short procedure, lasting approximately 5-15 minutes.[5]  The "Operative or Procedure Report" describes the procedure:

---

[2] After the endoscopy in question, White sent an undated letter to the Hospital.  This letter included White's recitation of events:  Dr. McMenamin "ran out of gas on his way to hospital and would be a little longer getting there.  After his arrival [Dr. McMenamin] was upset . . . . [T]his was his third trip to hospital today then came to me and said so something stuck in your throat and I said yes he then came closer over to me and said I HATE YOU, I HATE YOU, I HATE YOU!!!!!, that's when I went under . . . .  He may have thought I was already under, but still that's no excuse for his actions or attitude."

[3] Meghan McLane ("CRNA McLane").

[4] CRNA McLane testified during discovery that "it is practically impossible to force a patient, without their consent and cooperation, into the anesthetic for this procedure and into this procedure itself.  For example, before sedation can be given in this procedure, and before this procedure can begin, the patient must cooperate with the placement of a mouth guard and must allow the anesthesia provider access to their IV port.  Without patient cooperation none of these initial processes can take place."

[5] Commonwealth Anesthesia's appellate brief stated that the endoscopy lasted five minutes, but their motion for summary judgment stated the procedure lasted 15 minutes.  Our review of the

The gastroscope was passed through the mouth under direct visualization and was advanced with ease to the 2nd portion of the duodenum. The scope was withdrawn and the mucosa was carefully examined. The views were good. The patient's toleration of the procedure was good. Retroflexion was performed in the stomach. . . . The foreign body was removed, with success. . . . The stomach appeared to be normal. . . . The duodenum appeared to be normal. . . . There were no unplanned events.

White reported no complaints and was discharged from the Hospital.

One year later, on January 7, 2019, White filed an unsigned complaint in Clark Circuit Court alleging his esophagus was "damaged" during the endoscopy. White stated that before the endoscopy, he "attempted to object" but was "forced to submit to the treatment." White claimed his "injuries, illness and physical condition became aggravated, more complicated and more difficult to cure and he began to suffer complications and additional medical problems as a result of the defendants' actions."[6] Subsequently, he asserted, he incurred additional medical expenses, suffered loss of time from work and loss of earnings, and now has "chronic" and "permanent" injuries. During the discovery phase, White presented no expert testimony nor any medical records to show what the

record could not independently confirm the endoscopy duration, but the record confirms that CRNA Small completed an "Anesthesia Post-Op Progress Note" at 10:20 p.m.

[6] This original complaint named Commonwealth Anesthesia, the Hospital, Dr. Makdessian, and Dr. Makdessian's employer, Bluegrass Ear, Nose & Throat Clinic as defendants. Naming *Dr. Makdessian* appears to have been in error; *Dr. McMenamin* performed the endoscopy.

"permanent injury" or damage was or how the endoscopy was related to any alleged residual health issues.

In May 2020, Commonwealth Anesthesia filed a motion for summary judgment pursuant to CR[7] 56 alleging White failed to establish, through discovery, the sole allegation of medical negligence. White's basis of liability against Commonwealth Anesthesia was that White was anesthetized after he "attempted" to withdraw his informed consent. However, Commonwealth Anesthesia argues that White failed to establish that Commonwealth Anesthesia deviated from the accepted standard of care in any way, nor did White prove that any deviation from that standard of care was a substantial factor in causing injury. In June 2020, White responded arguing that the doctrine of *res ipsa loquitur*[8] saved the matter from summary judgment; White argued there existed an issue of material fact as to whether he objected to the anesthesia.

Also in June 2020, Commonwealth Anesthesia filed a motion to dismiss for failure to comply with an order of the court pursuant to CR 41.02. In that motion, Commonwealth Anesthesia stated that since January 2019, White had taken "no affirmative steps to move the case forward." In support, the motion

---

[7] Kentucky Rule of Civil Procedure.

[8] *Res ipsa loquitur* is Latin for "the thing speaks for itself." BLACK'S LAW DICTIONARY (11th ed. 2019).

alleged, in part, that White failed to timely reply to interrogatories, failed to timely reply to requests for admission, failed to timely answer discovery, failed to submit any written discovery requests nor request any depositions of Commonwealth Anesthesia's agents or employees, and failed to bring an action against Dr. McMenamin after mistakenly naming Dr. Makdessian as a defendant. In his brief response, White stated only that he had completed discovery and he had mailed medical records to Commonwealth Anesthesia in August 2019.

In March 2021, the Clark Circuit Court granted Commonwealth Anesthesia's motion for summary judgment. This appeal followed.

## STANDARD OF REVIEW

Appellate courts reviewing an order granting summary judgment review the circuit court's order *de novo*. *Pinkston v. Aubudon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citation omitted). *See also Hazel Enters., LLC v. Mitchuson*, 524 S.W.3d 495, 497-98 (Ky. App. 2017) (citation omitted). "The standard of review on appeal of summary judgment is whether the trial court correctly found there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Carter v. Smith*, 366 S.W.3d 414, 419 (Ky. 2012) (citations omitted). The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. *Steelvest, Inc. v. Scansteel Serv. Ctr.,*

-6-

*Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citation omitted).  To survive summary judgment, the nonmoving party must point to some affirmative evidence showing the existence of a genuine issue of material fact.  *Id.* at 481 (citation omitted).

## ANALYSIS

On appeal, White states that he "has been advised by additional treating physicians that he has an issue with his esophagus as a result of the treatment he received" at the Hospital.  However, there is nothing in the record to support that statement.  He contends the doctrine of *res ispa loquitur* "allows for recovery even without the testimony of a medical expert" and that expert testimony is not required to prove if/when White revoked consent.  Therefore, he argues summary judgment was inappropriate because a factual disagreement exists as to whether or not White objected to the procedure.  However, we find White's argument utterly lacks merit.  Here, not only did White fail to establish the existence of an issue of material fact, but he also failed to establish *any* of the required elements of medical negligence or *res ipsa loquitur*.

First, no issue of material fact exists.  True, expert evidence is not required in all instances where consent is challenged.  *Keel v. St. Elizabeth Med. Ctr.*, 842 S.W.2d 860, 862 (Ky. 1992).  However, White presents no evidence of any actions or words by White that revoked consent.  This Court has determined that withdrawal of consent – concerning liability for assault and battery – after

-7-

treatment is in progress requires 1) the patient to use clear language that leaves no room for doubt in the minds of reasonable men that consent was withdrawn and 2) revocation must be medically feasible without being detrimental to the patient's health. *Andrew v. Begley*, 203 S.W.3d 165, 172 (Ky. App. 2006) (quoting *Mims v. Boland*, 138 S.E.2d 902, 907 (Ga. App. 1964)). While liability here pertains to medical negligence – not assault or battery – we use the precedent as a guide while also applying common sense. White gave written, verbal and implied consent. Later, White might have *thought* about revoking consent, but he did not use "clear language" that left no room for doubt that he was revoking that consent. In fact, he did not use *any* language to revoke consent, nor did he remove the mouth guard or indicate to ER staff that he was an unwilling participant.

Further, White *admits* that he did not revoke consent to the endoscopy. White's appellate brief states that he "was *attempting* to advise that he did not wish to have the physician perform the procedure," not that he *did* advise the ER staff. White's subsequent letter to the Hospital stated "[i]f I had not gone under I would have gone to Lexington to have this [endoscopy] done." His letter did not say he protested, contested or in any way communicated to the ER staff that he wished to revoke consent. *Thinking* about revoking consent, does not correlate to actual revocation.

Next, general common law negligence claims require: (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992) (citing *Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967)). White presented no evidence that Commonwealth Anesthesia breached a duty nor any evidence of a resulting injury.

More specifically, a plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury. *Begley*, 203 S.W.3d at 170 (citations omitted). There are two exceptions to this expert witness rule, and both involve the application of *res ipsa loquitur*. *Id.* These exceptions: 1) involve situations in which "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care[,]" such as leaving a foreign object in the body or removing or injuring an inappropriate part of the anatomy; and 2) situations where "medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters[,]" *e.g.*, when a "doctor makes admissions of a technical character from which one could infer that he or she acted negligently." *Id.* at 170-71(citations omitted). Here, White argues that *res ipsa loquitur* applies, but he fails to explain how.

White did not show how CRNA Small's actions breached a standard of care, or that CRNA Small made *any error at all* while performing his medical duties.

"In a medical malpractice action, where a sufficient amount of time has expired and the plaintiff has still failed to introduce evidence sufficient to establish the respective applicable standard of care," the defendants are entitled to summary judgment as a matter of law. *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010) (internal quotation marks and citations omitted). In such cases without the requisite proof, a jury trial would be a "a futile exercise, wasteful of judicial time, jurors' time and the litigants' time and resources[,]" thereby making dismissal pursuant to CR 56 appropriate. *Id*. at 675.

## CONCLUSION

Therefore, summary judgment was proper in this case. We AFFIRM the order of the Clark Circuit Court.


ALL CONCUR.


BRIEF FOR APPELLANT:

Brian N. Thomas
Winchester, Kentucky

BRIEF FOR APPELLEE:

Clayton L. Robinson
Shannon M. Naish
Lexington, Kentucky