**Joseph B. McDONALD, and Delois C. McDonald, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 86–2137.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 5, 1987.

Decided March 31, 1988.

Angelo J. Polizza, Chambers, Steiner, Mazur, Ornstein & Amlin, P.C., Angela J. Nicita, George Menendez and Richard J. Carolan, argued, Detroit, Mich., for plaintiffs-appellants.

Evelyn D. Sahr, argued, Trial Atty., Civil Div., Dept. of Justice, and Jo Brooks, Washington, D.C., for defendant-appellee.

Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiffs Joseph B. McDonald (McDonald) and his wife, Delois C. McDonald, filed this medical malpractice action on May 31, 1985 seeking damages for negligent performance of a surgery performed at the Ann Arbor, Michigan Veterans Ad-

ministration Hospital (V.A.) in August 1980. The district court dismissed the claim as barred by the two year statute of limitations of 28 U.S.C. § 2401(b) and plaintiffs appealed.

In July 1980, McDonald was admitted to the Ann Arbor V.A. complaining of "dragging" in his right foot and stiffness in his legs and arms. He was diagnosed as having severe cervical spondylosis, a spinal condition. On August 14, 1980, McDonald underwent a cervical laminectomy in order to relieve pressure on the spinal canal.

Shortly after the operation, McDonald experienced severe weakness in his hands and arms. Delois McDonald advised Dr. Stephen Shogan (Shogan), the surgeon who had performed the laminectomy, about the post-operative weakness. Shogan informed her that the surgery had gone well and that there had been no complications. He explained that it could take as long as three to five years for McDonald to improve and regain the strength in his extremities. This prognosis was verified by several other V.A. doctors who also told the McDonalds that it would take two years or more for McDonald to "get better."[1]

McDonald gradually improved somewhat and is presently capable of walking with the aid of a walker. Because of this slow improvement, the McDonalds believed that V.A. doctors' optimism was justified—McDonald's post-operation condition did appear to be improving.

However, in April 1984, a neurologist who examined McDonald diagnosed McDonald as having quadriparesis, causally related to intra-operative injury to the spinal cord. Shortly after his consultation with the neurologist, McDonald presented an administrative claim to the V.A. on June 18, 1984. The instant complaint was filed on May 31, 1985.

Applying *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) the lower court dismissed McDonald's claim as time-barred. Because this court finds that a patient may reason-

ably rely upon the assurances of his physician, the court finds *Kubrick* inapposite and the decision of the district court is reversed and remanded.

▮ *Kubrick* stands for the proposition that "accrual" of a malpractice cause of action against the government occurs when the plaintiff discovered or in the exercise of reasonable diligence should have discovered both the injury and its cause. *Kubrick*, 100 S.Ct. at 359–60. However, when a physician misinforms the patient that complications are not unusual occurrences and will improve, the statute of limitations is not activated. *See e.g., Rosales v. United States*, 824 F.2d 799, 804 (9th Cir.1987). Since a patient may rely upon the advice of his treating physician, McDonald had no reason to doubt the advice of his physician and inquire about any injury or its cause. "Patients may reasonably rely on assurances by physicians that complications are normal and do not indicate that an actual injury has occurred." *Rosales v. United States*, 824 F.2d at 804. *See also Wehrman v. United States*, 830 F.2d 1480, 1484–85 (8th Cir.1987) (VA staff's alleged repeated advice is highly relevant and critical to the question of whether claimant should have suspected negligence); *Otto v. National Institute of Health*, 815 F.2d 985, 989 (4th Cir.1987) (where patient's doctors give explanation for complications that ensue, claim for malpractice does not accrue until patient is aware of true nature of her permanent and irreparable injury); *Raddatz v. United States*, 750 F.2d 791, 796 (9th Cir.1984) (doctor's assurances may be reasonably relied on by a patient); *DuBose v. Kansas City Southern Railway*, 729 F.2d 1026 (5th Cir.1984) (medical advice which suggests an erroneous causal connection or otherwise lays to rest a plaintiff's suspicion regarding what caused his injury is relevant to determination of when plaintiff should be charged with actual notice of his injury).

The reason for the rule enunciated in the Fourth, Fifth, Eighth, and Ninth Circuits is

**1.** This version of the facts is disputed, but for summary judgment purposes must be taken as true.

clear: the patient has a "right to place trust and confidence in his physician." *Otto,* 815 F.2d at 988. Because the patient is utterly dependent upon the skills and ability of the physician, the patient should not be required to second-guess his physician's prognosis.

Most significantly, a rule requiring patients to scrutinize their doctor's diagnosis or prognosis would impose an unfair burden on the patient. Numerous courts have decided that a patient's "blameless ignorance" should not be held against him. *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).[2] *See also Nicolazzo v. United States,* 786 F.2d 454, 456 (1st Cir.1986) (where plaintiff receives incorrect diagnoses, his "blameless ignorance" of the basis for "cause of action prevents the statute of limitations from running until plaintiff receives a correct diagnosis"); *Barrett v. United States,* 689 F.2d 324 (2d Cir.1982) ("any plaintiff who is blamelessly ignorant of the existence or cause of his injury" should be accorded the benefits of a more liberal accrual standard); *Jastremski v. United States,* 737 F.2d 666, 670 (7th Cir.1984) (physician present when his son was delivered should not be expected to know that the delivery performed by another physician had resulted in injury to the child).

Accordingly, this court concludes that the statute of limitations should be tolled during the period of the McDonalds' "blameless ignorance." In the instant case the assurances given to McDonald, if any, present a controverted issue of material fact which would defeat a motion for summary judgment. *See Wehrman,* 830 F.2d at 1484–86 (reliance on VA staff's advice prevents statute of limitations from running; question of precise amount of time statute is tolled is question of fact); *DuBose v. Kansas City Southern Railway Co.,* 729 F.2d at 1032–33 (if plaintiff relies on erroneous medical advice, there is fact question regarding when plaintiff became aware that disease causally related to employment); *Augustine v. United States* 704 F.2d 1074, 1078–79 (9th Cir.1983)

(where issue of whether dentists properly diagnosed plaintiff's condition and adequately informed him of need to obtain care is central to malpractice case, question of when plaintiff became aware of injury was factual determination); *Zeidler v. United States,* 601 F.2d 527, 531 (10th Cir. 1979) (factual determinations concerning when claims against the V.A. accrued should be made by the district court); *Camire v. United States,* 535 F.2d 749, 751 (2d Cir.1976) (summary judgment improper when genuine issue of material fact existed as to when reasonable person should have realized that negligent malpractice had occurred).

For the reasons expressed above, the judgment of the district court is reversed and this case is remanded for factual findings consistent with this opinion. This Court, of course, expresses no opinion upon the ultimate resolution of the statute of limitations issue.

---

**2.** The *Kubrick* court expressly reaffirmed the vitality of *Urie.* 100 S.Ct. at 358, Note. 7.