**Gene T. GREGORY, Plaintiff,**

v.

**Dr. Marshall POOR, Defendant.**

Action No. C91–0303–P.

United States District Court,
W.D. Kentucky,
Paducah Division.

Sept. 7, 1994.

Kevin George, George, George & Meena, Louisville, KY, for plaintiff.

Jonathan Freed, Boehl, Stopher & Graves, Paducah, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This matter is before the Court on Motion for Summary Judgment by the Defendant, Dr. Marshall Poor. In his action for medical malpractice, Plaintiff seeks damages for injuries resulting from a surgical procedure recommended and performed by Defendant and argues that Dr. Poor negligently failed to inform him of the risks attendant to the surgery. Defendant argues that Plaintiff's action should be dismissed because it was not timely filed within the one year statute of limitations provided by K.R.S. 413.140(1)(e) for medical malpractice actions. The Court agrees that Plaintiff did not commence his lawsuit in a timely fashion after his cause of action accrued and, therefore, sustains Defendant's Motion.

### I.

Defendant began treating Plaintiff on June 1, 1990, at which time Plaintiff was complaining of difficulty in walking, progressive weakness in his limbs, and progressive loss of sensation in his arms. Based on the results of diagnostic examinations and Plaintiff's medical history, Defendant diagnosed post-traumatic cervical syringomyelia[1] and recommended a cervical laminectomy and drainage of the syrinx (a cyst on the spinal cord) to prevent Plaintiff's condition from deteriorating. Dr. Poor performed the recommended surgery on Plaintiff on October 29, 1990. Plaintiff first became aware that his condition was not stabilized by the surgery, but instead had deteriorated, as soon as he regained post-operative consciousness in the intensive care unit. Plaintiff was discharged from the hospital on November 27, 1990 and completed his post-operative treatment with Defendant on April 30, 1991.

On December 2, 1991, Plaintiff filed a complaint against Dr. Poor alleging: (1) that Dr. Poor deviated from acceptable standards of care for a neurosurgeon, and (2) that Defendant's negligence resulted in permanent physical injury to Plaintiff. In response to Defendant's interrogatories, Plaintiff limited his claim of negligence to Defendant's failure to warn him adequately of the risks and possible outcomes of the recommended sur-

---

1. Cervical syringomyelia is a fluid cavity in the spinal cord that destroys nerve cells, axons, and supporting glial cells.

gery. Defendant asserts the action is barred pursuant to the one year statute of limitations for medical malpractice actions provided in K.R.S. 413.140(1)(e). Plaintiff counters only that the action did not accrue until January 15, 1991, when he "confronted" Dr. Meriwether, who told him that Dr. Poor "should have told him" of the surgical risks of a cervical laminectomy. Dep. Dr. Meriwether, at 6–7. As authority for this proposition, Plaintiff asserts that "under Kentucky's liberal discovery rules, the statute would not begin to run until well after December 2, 1990." Pl.'s Response to Def.'s Mot. for Summ. J., at 3.

Because Kentucky courts have not addressed directly the issue of when a cause of action for lack of informed consent accrues, this Court must predict how the Kentucky Supreme Court might rule in these circumstances. In other words, the Court must indeed conclude whether the Kentucky "discovery rule" is so "liberal" as to encompass these facts.

## II.

■ K.R.S. 413.140(1)(e) mandates that an "action against a physician [or] surgeon for negligence or malpractice" shall be "commenced within one (1) year after the cause of action accrued." In Kentucky, a cause of action for negligence or malpractice accrues "on the date of the discovery of the injury or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *Hackworth v. Hart*, 474 S.W.2d 377, 379 (Ky.1971). In other words, Kentucky law will "extend the commencement of the statute of limitations only up to the time that the harmful effect of the complained of negligence first manifests itself." *Hall v. Musgrave*, 517 F.2d 1163, 1167 (6th Cir. 1975). In Kentucky, lawsuits alleging a lack of informed consent due to a doctor's failure to warn adequately of the risks of a surgical procedure are treated as malpractice claims and must be brought within the one-year statute of limitations. *Holton v. Pfingst*, 534 S.W.2d 786, 788 (Ky.1975).

■ Although Kentucky courts have not spoken clearly on the law of informed consent, an action for failure to disclose the risks of treatment charges the physician with a breach of her duty to her patient and is considered a negligence action. *See Holton v. Pfingst, supra* at 788. As such, a physician's negligent failure to disclose the risks of treatment is established by proof of nondisclosure (breach of duty), causation, and injury. Accordingly, for the cause of action to accrue and the statute of limitations to begin to run, the following elements must be established: (1) the physician failed to inform the patient of alternative treatments, the reasonably foreseeable risks of each alternative and the risks of no treatment in a manner consistent with the accepted standard among other physicians of similar training and experience; (2) a reasonable patient would not have a general understanding of the procedure and its risks and would have chosen a different treatment or no treatment had each alternative and its associated risks been made known to the patient; and (3) the patient was injured as a result of submitting to the treatment. *See* K.R.S. 304.40–320 and *Bennett v. Graves*, 557 S.W.2d 893, 894 (Ky.App.1977) (discussing very generally the elements of an action for negligence based on lack of informed consent).

■ By the very nature of elements one and two (non-disclosure and causation) of Plaintiff's claim, the factual underpinnings would have occurred no later than the date of surgery, October 29, 1990. The final element, injury, is subject to Kentucky's discovery rule and is established on the date the injury actually occurred or "on the date of the discovery of the injury[,]" whichever occurs later. *Hackworth, supra* at 379. According to his deposition testimony, Plaintiff was aware that his physical condition had deteriorated, rather than improved, as soon as he regained post-operative consciousness.[2]

---

**2.** During his deposition Plaintiff was questioned about the time at which he first realized that his condition had deteriorated. Mr. Gregory responded in the following manner:

Q: Is it your claim that your condition now is worse than when you went into surgery?
A: Yes.

Pl.'s Dep. at 29, 67, 79–80. At that time, his cause of action accrued.

Although it was not cited by either party to this matter, the language of Kentucky's seminal case involving the creation of the discovery rule, *Tomlinson v. Siehl*, is worth discussing because it may provide an insight to future decisions by Kentucky courts. 459 S.W.2d 166 (Ky.App.1970). In *Tomlinson* the court relied on the language of other states' decisions to forge a new "discovery rule" and in dicta the court selected quotes from California law that indicate that a statute of limitations for malpractice will not "commence to run" so long as the physician-patient relationship continues, "even though the condition itself is known to the plaintiff, so long as its negligent cause and deleterious effect is not discovered." *Id.* at 168 (citations omitted).

Cases such as the ones relied upon in *Tomlinson*, which extend the commencement of malpractice statutes of limitations for the duration of the physician-patient relationship, seek to explain when a patient, who is fully aware of his physical condition, should have known his doctor was negligent. The courts in these cases often are reluctant to impose a burden greater than actual knowledge of "injury," which is different than mere physical condition, on a plaintiff who is continuing to receive post-operative treatment and assurances from his physician.[3] Or, courts at least will toll the statute of limitations until the plaintiff reasonably should know that an inju-

ry has occurred, even though his continued relationship with his physician may make the cause of action not readily discoverable. *Cf. Michels v. Sklavos*, 869 S.W.2d 728, 732 (Ky. 1994) (applying the "continuing relationship" modification of the "discovery rule" to a legal malpractice action based on the language of *Tomlinson v. Siehl* ).

Unlike *Tomlinson*, in which the basis for the plaintiff's complaint was a negligently performed surgical procedure, the basis for Mr. Gregory's suit is lack of informed consent. Considered independently, Plaintiff's worsened post-operative condition was not outside the range of possible results of a competently performed operation. Rather, Plaintiff's condition rises to the level of "injury" only because it is outside the bounds of the possible outcomes explained to him. Consequently, the physician-patient relationship between Plaintiff and Defendant could not affect the time when Plaintiff should have known that he was "injured" (e.g. that his post-operative condition was worse than he had been lead to expect that it could be).

Moreover, there is no question of when Plaintiff *should have known* he was injured by Dr. Poor's negligence. As his testimony indicates, Plaintiff *knew* the third element of his claim existed immediately after the surgery. *See* Pl.'s Dep., *supra* note 2. As soon as he regained consciousness, Plaintiff was aware that, contrary to his understanding of the risks of a cervical laminectomy, his condi-

---

> Q: And when did you realize that your condition was worse than when you went into surgery?
> A: It has been worse ever since the surgery.
> Q: I mean, did you realize that as soon as the surgery was over?
> A: Yes, sir.
> Q: So first day after surgery, you realized—
> A: The fact that I had lost the use of my legs, I had lost control of my bowels and lost control of my kidneys.
> Q: When did you first realize that? Right after surgery?
> A: When I came out from under the anesthetic?
>
> (Pl.'s Dep., at 67).

**3.** For a more thorough discussion of this issue, *see McDonald v. U.S.*, 843 F.2d 247 (6th Cir. 1988) (holding that a two-year limitations period governing a malpractice claim arising out of surgery performed at a Veterans Administration Hospital was tolled due to a physician's post-operative assurances that complete recovery could take as long as three to five years). In *McDonald*, the Sixth Circuit adopted the logic of other federal courts that considered a physician's advice and assurances "highly relevant and critical to the question of whether claimant should have suspected negligence." *See id.* at 248 (quoting *Wehrman v. United States*, 830 F.2d 1480, 1484–85 (8th Cir.1987)). The Sixth Circuit considered persuasive the logic that a patient has a "right to place trust and confidence in his physician" because he is "utterly dependent on the skills and the ability of the physician." *Otto v. Nat'l Institute of Health*, 815 F.2d 985, 988 (4th Cir.1987); *McDonald* at 249. And, the court held that "a rule requiring patients to scrutinize their doctor's diagnosis or prognosis would impose an unfair burden on the patient." *McDonald* at 249.

tion had deteriorated. At that time, he had knowledge of all the facts that he now purports establish his cause of action. With the knowledge of these facts, Plaintiff's claim accrued and the statute of limitations began to run.

Dr. Meriwether's later comment that Dr. Poor "should have" explained the risks of surgery is analogous to a legal conclusion. In any case such as this one, a plaintiff may argue that, although the facts were apparent, he was unaware of his legal cause of action based upon those known facts. But Kentucky courts have not extended the discovery rule to encompass these circumstances. And, there seems to be good reason for not doing so. Given the basis for this action, the legal significance of Dr. Meriwether's comment is no different than the significance of a lawyer advising a client, who knows he has been injured, that he has a cause of action or an expert witness concluding his analysis and submitting a report. The discovery of such legal conclusions does not delay accrual of a cause of action. If such discovery were grounds for delay, it would arise inevitably in every case filed beyond the limitations period, thus negating entirely the reason for such statutes. All elements of Plaintiff's claim were established and his cause of action accrued before December 2, 1990.

For the foregoing reasons, the Court finds that Plaintiff's complaint is barred by the one-year statute of limitations provided in K.R.S. 413.140(1)(e) and, therefore, sustains Defendant's Motion for Summary Judgment.

### ORDER

This case is before the Court on Motion for Summary Judgment by Defendant, Dr. Marshall Poor. The Court having issued a memorandum opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is **SUSTAINED** and the Complaint is **DISMISSED.** This is a final and appealable order and there is no just reason for delay.