Teresa A. COFFIE, Plaintiff–Appellant, Cross–Appellee,

v.

UNITED STATES of America, Defendant–Appellee, Cross–Appellant.

Nos. 00–6131, 00–6258.

United States Court of Appeals, Sixth Circuit.

Aug. 2, 2002.

Before SUHRHEINRICH, SILER, and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Teresa Coffie appeals the district court's order granting summary judgment in favor of the United States on her medical malpractice claim brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2675. The district court concluded that because any monetary recovery under the FTCA would be offset against her disability benefits under 38 U.S.C. § 1151, Coffie could not state a claim for which relief could be granted. The government cross-appeals the district court's finding that the plaintiff's claim of medical malpractice was not barred by the FTCA's two-year statute of limitations. For the reasons that follow, we conclude that the plaintiff's claim is not barred by the statute of limitations, but that dismissal of the claim on setoff grounds is premature; until the court determines whether Coffie would be entitled to recover for the alleged medical malpractice and the extent of that recovery, there is no basis on which to determine whether that amount would exceed the amount of her disability benefits. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

On November 7, 1994, the plaintiff, Teresa Coffie, filed an administrative claim against the Department of Veterans Affairs (DVA) alleging medical malpractice for her 1979 and 1984 oral surgeries, during which she received silastic implants. When that claim was rejected, she filed a complaint under the Federal Tort Claims

Act (FTCA), pursuant to 28 U.S.C. §§ 1346(b) and 2675, demanding $3,500,000.00 in damages for the DVA's alleged failure to warn her that silastic block implants were intended to be temporary and required subsequent removal, failure to treat her symptoms, and failure to remove the implants.

The DVA responded with a motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Coffie failed to file her administrative claim within two years after the accrual of her cause of action, which the DVA claimed had occurred, at the latest, at the time of her second surgery. The district court denied this motion because it found that the date of accrual was December 23, 1992, the date Dr. Charles Witkowski performed surgery and informed her that her crumbled jaw was the result of the silastic implants.

The DVA filed a second motion for summary judgment, arguing that Coffie's expert was not qualified and without his testimony, Coffie could not present evidence to support her claim. The district court denied this motion. On February 16, 2000, the DVA filed a third motion for summary judgment, this time arguing that Coffie failed to state a claim on which relief could be granted because any recovery she obtained under the FTCA would be offset by the disability benefits she was receiving pursuant to 38 U.S.C. § 1151. The district court granted this motion, finding *Bryan v. West*, 13 Vet.App. 482 (Vet.App.2000), controlling and concluding that because Coffie's future veterans' disability compensation benefits under 38 U.S.C. § 1151 were based on the same disability, they must be offset by the entire amount of any judgment or settlement proceeds recovered under the FTCA. Because of this offset, the court said, Coffie would be placed in a position where she would have to pay her own recovery under the FTCA, and thus, she could not prove damages. This timely appeal followed.

## STATEMENT OF FACTS

Coffie served in the United States Army from 1974 until 1977, during which time she suffered an injury resulting in dental treatment. In 1979, Dr. Kevin McBride of the DVA Medical Center in Dallas, Texas, performed surgery on Coffie's left temporal mandibular joint (TMJ) in her jaw and rebuilt it with block silastic material. Dr. McBride claims that because there were no reported problems with block silastic TMJ implants at the time, he did not inform Coffie that the implant was only temporary and would eventually have to be removed. Coffie at first noticed improvement in her jaw but then experienced pain and swelling.

Not long thereafter, Coffie moved to Tennessee and sought treatment at a DVA medical facility there, informing the doctors of the earlier silastic implant and complaining of spasms in her right TMJ and swelling and rashes on her face, throat, and hairline. Coffie underwent oral surgery performed by Dr. Carey Mickalites on her right TMJ in 1984. Dr. Mickalites contends that the standard of care for treatment of TMJ patients in 1984 did not require him to remove the block silastic implant in Coffie's left TMJ, so he did not inform Coffie of any need to remove the implants. Dr. Mickalites denies that the surgery he performed included any silastic implants.

Coffie experienced numerous dental problems and intense pain after 1984, for which she sought help from Dr. Mickalites but claims to have gotten little relief. In 1992, Dr. Mickalites told her that she needed to see a psychiatrist and not a dentist because the pain was in her head, not in her mouth. On November 25, 1992, Coffie sought the assistance of a private

physician, Dr. Charles Witkowski, because she could barely open her mouth, and she was in extreme pain. Dr. Witkowski saw her again on December 3, 1992, and performed oral surgery on December 23, 1992, during which he found a crumbled jaw and removed what he believed to be a small section of a silastic implant remnant on her right TMJ; he removed a large block silastic implant from her left TMJ; and he discovered evidence of degenerative joint disease, caused–in his opinion–by the silastic implants. Dr. Witkowski maintains that physicians have known since the mid–1980s that silastic implants were only temporary solutions and should be removed within six months because if left in for longer periods, they can cause the breakdown of the bones of the joint. Coffie contends that prior to the surgery in 1992, she did not know that the implants needed to be removed.

In 1995, Coffie was awarded $2,000.00 per month in disability benefits pursuant to 38 U.S.C. § 1151 because, partially as a result of her TMJ deterioration from the silastic implant on the left side, she was unable to secure substantially gainful employment.

## ANALYSIS

### STATUTE OF LIMITATIONS

#### A. Standard of Review

We review de novo a district court's denial of a motion to dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). Bd. of Trustees of Painesville Township v. City of Painesville, Ohio, 200 F.3d 396, 398 (6th Cir. 1999). To survive a motion to dismiss, the plaintiff's complaint must contain "either direct or indirect allegations respecting all material elements to sustain a recovery under some viable legal theory." Id. (quoting Allard v. Weitzman (In re DeLo-

rean Motor Co.), 991 F.2d 1236, 1240 (6th Cir.1993)). We must "construe the complaint in a light most favorable to plaintiffs, accept as true all of plaintiffs' well-pleaded factual allegations, and determine whether plaintiffs can prove no set of facts supporting [their] claims that would entitle [them] to relief." Painesville, 200 F.3d at 398. When the district court's ruling on jurisdiction is based in part on the resolution of factual disputes, we accept the district court's findings unless they are clearly erroneous. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 326 (6th Cir. 1990).

#### B. Statute of Limitations and Accrual

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Generally, a tort claim accrues at the time of injury, but in medical malpractice cases, the limitations period does not begin to run until the plaintiff has discovered or should have discovered both the critical facts of the injury and its cause. United States v. Kubrick, 444 U.S. 111, 120, 122–23, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

Once the plaintiff is cognizant of the injury and its cause, she is required to make a reasonable inquiry that may reveal the existence of a colorable claim of medical malpractice. McDonald v. United States, 843 F.2d 247, 248 (6th Cir.1988). The timeliness of this inquiry is measured by an objective standard–whether a reasonable person's suspicions of an injury would induce that individual to seek professional advice regarding legal recourse. Barren v. United States, 839 F.2d 987, 990 (3d Cir.1988) (citing Kubrick, 444 U.S. at 123–24).

This definition does not extend the time of accrual until the plaintiff is aware that

the injury was negligently inflicted and thus may constitute medical malpractice. *Kubrick*, 444 U.S. at 123. Rather, a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant. *McDonald*, 843 F.2d at 248.

■ In the present case, we reject the DVA's contention that the statute of limitations began to run, at the latest, in 1984, when Coffie had her second surgery. While there is no doubt that the pain and other symptoms Coffie endured made her realize that she was injured in some respect, she did not become cognizant of the full extent of her injury and its cause until Dr. Witkowski performed oral surgery on December 23, 1992, discovered the remnants of the silastic implants and her crumbled jaw, and informed her that the implants caused the degeneration of her TMJ and should have been removed no more than six months after they were placed in her jaw. Prior to that point, no one had informed Coffie of the potential dangers of leaving in the silastic implants.

We acknowledge that there is a genuine dispute as to when the medical profession learned that silastic implants were potentially dangerous. That is not dispositive of the timeliness issue, however, because whether Coffie timely filed her administrative claim is determined by when *she* became aware of both her injury and its cause.

Because we find that Coffie became aware of both her injury and its cause on December 23, 1992, we agree with the district court that her administrative claim, filed on November 7, 1994, was filed within the two-year statute of limitations.

## OFFSETTING OF BENEFITS

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. The FTCA's Offsetting of Disability Benefits

■ Section 1151 of Title 38 of the United States Code provides:

Where an individual is, on or after December 1, 1962, awarded a judgment against the United States in a civil action brought pursuant to section 1346(b) of title 28 or, on or after December 1, 1962, enters into a settlement or compromise under section 2672 or 2677 of title 28 by reason of a disability or death treated pursuant to this section as if it were service-connected, then no benefits shall be paid to such individual for any month beginning after the date such

judgment, settlement, or compromise on account of such disability or death becomes final until the aggregate amount of benefits which would be paid but for this subsection equals the total amount included in such judgment, settlement, or compromise.

38 U.S.C. § 1151(b). This offsetting provision was enacted to avoid duplicate recoveries. Any individual receiving disability benefits under § 1151 who obtains an award of damages under the FTCA for the same injury is precluded from receiving those monthly benefits until the amount of the benefits withheld equals the amount of the damage award. *Id.; Morgan v. United States,* 968 F.2d 200, 207 (2d Cir.1992). That amount includes attorney's fees and does not distinguish between economic and non-economic damages. *Bryan v. West,* 13 Vet.App. 482, 487–88 (Vet.App.2000).

The district court relied on *Bryan v. West* to conclude that Coffie could not prove damages because any amount she received would be completely offset against her disability benefits. Therefore, the court held, Coffie had failed to state a claim upon which relief could be granted.

We conclude that this finding is erroneous. First, the district court has essentially precluded Coffie–or any other tort plaintiff receiving government disability benefits–from filing suit or obtaining an award under the FTCA. Currently, Coffie receives $2,000.00 per month in disability benefits. Were Coffie to succeed in her malpractice claim and obtain the damage award she demands in her complaint, she would be awarded $3,500,000.00. However, at the rate of $2,000.00 per month for the rest of her life, the aggregate amount of disability benefits she will be paid will never–barring a miraculously long life–total $3,500,000.00. Hence, her benefits would never completely offset her entire FTCA recovery.

Second, Coffie's situation is distinct from the circumstances in *Bryan v. West* because the plaintiff in that case had already settled her claim; thus, the amount of the damage award had been determined, and the offset against the disability benefits could be calculated. Here, Coffie's damages amount is unknown because she has not been permitted to litigate or settle her claims. We conclude that while the district court was correct in recognizing the potential for setoff, it was premature in its conclusion. While we express no opinion as to whether Coffie will be able to prove either her medical malpractice claim or the extent of her damages, we hold that she has stated a claim and is entitled to her day in court to attempt to do so.

## CONCLUSION

For the foregoing reasons, we AFFIRM the denial of summary judgment to the government on the issue of timeliness; we REVERSE the grant of summary judgment for failure to state a claim on which relief may be granted; and we REMAND this case for proceedings consistent with this opinion.